226 So.2d 46 (1969)
In re ESTATE of Maude L. WOOD, Deceased.
Mrs. Margaret C. KING, Mrs. H.A. McBrairty, Miss Josephine L. Clarke, Mrs. Viola Murphy, Mrs. J.J. Dunne, and Mrs. Gladys Henckel, Appellants,
v.
The LEE COUNTY BANK, Administrator, C.T.A. of the Estate of Maude L. Wood, et al., Appellees.
No. 68-40.
District Court of Appeal of Florida. Second District.
August 13, 1969.
Rehearing Denied September 8, 1969.
*47 Frank C. Alderman, Jr., of Alderman, Johnston & Pack, Fort Myers, for appellants.
Henderson, Franklin, Starnes & Holt, Fort Myers, for Lee County Bank, appellee.
C. Michael Jackson, of Stewart & Stewart, Fort Myers, for appellees Frances Gauss, George B. Wood, Jr., David R. Wood, George E. Clemens, III, and Angell Memorial Hospital for Animals.
Richard Ian Brickman, of Paul & Thomson, Miami, co-counsel for Angell Memorial Hospital, appellee.
Emmett B. Anderson, of Anderson & Blair, Fort Myers, for appellee, Assn. of Sigma Tau Alumni D.K.E., Inc.
HOBSON, Chief Judge.
This is an appeal from an order interpreting the Will of Maude L. Wood. The appellants are the heirs at law of Maude L. Wood. The appellee, Lee County Bank, is the administrator c.t.a. of the Estate of Maude L. Wood. The remaining appellees are the named devisees in the Fifth Paragraph of the Will of Maude L. Wood and shall be referred to herein as the devisees. Maude L. Wood will be referred to herein as "decedent" and Austin C. Wood, Maude L. Wood's husband, will be referred to herein as "decedent's husband."
The facts involved are in all material aspects undisputed. The decedent and her husband executed similar wills leaving his or her entire estate to the survivor of the two. Decedent's husband predeceased her and therefore his entire estate went to the decedent.
The decedent and her husband in their wills had a similar paragraph Fifth, a portion of which reads as follows:
"If my said husband, AUSTIN C. WOOD, and I perish in a common disaster, or die as a result of injury sustained in a common disaster and it is impossible to determine which predeceased the other, then I give, devise and bequeath my Estate as follows:"
Following this there are thirteen named devisees which are identical in both wills.
The problem arising from the decedent's will (which was common to both wills) is that no provision was made for the disposition of the decedent's estate in the event she and her husband did not perish in or as a result of a common disaster and her husband predeceased her.
The question presented to the lower court was: In view of paragraph Fifth of decedent's will, and the fact that decedent's husband, Austin C. Wood, predeceased the testator, who shall take under the will, the named devisees in paragraph Fifth or the heirs at law through intestacy?
The lower court held that there was an ambiguity in the will and therefore parol evidence was admissible to show the intent of the decedent. After taking testimony the lower court found that the true intent of the decedent was for the named devisees to take under the will and not that her estate pass under the laws of intestacy. The learned county judge entered his findings and opinion as follows, with which we agree and adopt as part of this opinion:
"* * * For clarity and conciseness the parties will be referred to henceforth as Devisees and as Heirs, even though some individuals land in both camps.
"The Heirs have objected to any Will interpretation at all, contending no ambiguity exists for the Court to interpret. At first blush it would appear the Heirs are upon solid ground, however it is the duty of this Court to follow the law as well as construe a Will as near to the Testator's intent as can be done. We are not to swallow rules of construction or ancient concepts which do violence to the Testator's intent. This Court is inclined to follow the law as set down by the Honorable Judge Wigginton, In Re Parker's Estate, 110 So.2d 498, and the numerous cases cited therein in which it was stated `It is uniformly held in this jurisdiction that in construing last Wills and Testaments the polar star by which the Court *48 is guided is the intent of the testator as ascertained by a consideration of the entire instrument, and not some isolated segment thereof.
"`In determining intent, the situation of the testator at the time he made his will, the ties that bound him to the object of his beneficence, the motives which prompted him to make the will he did make, and the influence that wrought on him at the time will all be considered in arriving at the purpose of the testator. When once the intention has been discovered, the wording of the will shall be given such liberal construction as will effectuate the intention of the testator consistent with established rules of law. One of the important factors to be considered in arriving at testator's intent is the apparent testamentary scheme adopted by him for disposition of his property as shown by the terms and provisions of his will.'
"It is more than difficult, yes, even impossible, for this Court to convince itself the Testator intended to execute a testamentary devise that would, under a normal, expected and common occurrence, cause her Estate to devolve upon persons unknown to her or her husband.
"The scrivener's testimony shows the Decedent brought a list of devisees to his office after a thorough consideration of same with her husband. The list was in her own handwriting. The identical devisees and percentages appeared in the Husband's Will and in the Wife's Will. It is interesting to note the relationships of each devisee and the percentages taken under paragraph Fifth. Four devisees were three relatives and the college fraternity of Austin Wood with no connection to Maude Wood. These four devisees were to receive 42 1/2% of the Estate. Seven devisees were six relatives of Maude Wood and a church, in memory of her mother. None of whom where shown to have any connection with Austin Wood. These devisees were to receive 50% of the total Estate. The other 7 1/2% of the total Estate was devised to two devisees, a natural person and a hospital. There is no showing in this case as to whether there existed any personal interest by one testator in such devisee (sic). The mere devision of the Estate assets as above set forth, almost by itself, scream out the intent.
"The testimony and the surrounding circumstances, as well as the terms of the Will paint a perfect picture. Here an elderly couple, with no immediate family and no direct descendants, sit down together and draft a list of names for the ultimate disposition of their wordly goods. The devises in paragraph FIFTH reflect almost a 50-50 split between the relatives of the husband and the relatives of the wife. The over-all testamentary disposition of each Will is so clear and rational there almost arises a contractual obligation on the part of a survivor to continue this testamentary scheme, at least as to the relatives and charities relating to the spouse who predeceases.
"The Court is not ignoring the strong argument of the heirs nor the law as presented to the Court. The cases cited to the Court by the heirs are most persuasive. They do present, however, only rules and canons of interpretation. All of these rules and canons are devises (sic) contrived by our Courts to arrive at one ultimate conclusion: The testamentary intent of the Testator. The Court is further aware this particular point is a matter of first impression in the State of Florida, and one not to be decided lightly. However to follow these rules and canons blindly merely because they have controlled some cases in other jurisdictions in the past would, in this case, violate and destroy an overall testamentary scheme clearly set forth, but ineptly expressed. The question in this case is identical to the one expressed in the New Jersey case of Darpino vs. D'Arpino, 73 N.J. Super. 262; 179 A.2d 527, at page 531 `The question presented is simply this: Will the Court execute *49 the clear intent of the Testator, not fully or clearly expressed in a will, or will it, by a strict technical adherence to the form of words and their literal meaning suffer the intention of the Testator to be defeated?' This Court is constrained to hold with the theory that the Testator's intent is clear beyond a reasonable doubt and that intent was the named devisees were to take and enjoy the worldly goods of Austin and Maude Wood after the survivor thereof was no longer able to hold and enjoy the same."
The appellants contend that there is no ambiguity arising out of the will and therefore the lower court erred in allowing any parol evidence to be admitted. We are convinced, as was the lower court, that a latent ambiguity exists which arises out of a conflict between the actual wording of paragraph Fifth and the general intent of the decedent as shown by the will as a whole.
Redfearn on Wills and Administration of Estates in Florida, Volume 1, page 11, § 130, paragraph Tenth, states as follows:
"Tenth.  A general intention of a testator, as gathered from his entire will, must prevail over a particular intention gathered from part of the will. It would be unjust to allow a general intention, gathered from the whole will, to be defeated by an inaccuracy or an inconsistent expression of a particular intention." (Citations omitted)
On the same point of law involving the construction of wills, Page, in 4 Bowe-Parker: Page on Wills, § 30.11, states as follows:
"While the will of testator is to be construed as an entirety and all provisions therein are to be rendered consistent with each other, it not infrequently happens that the general intent of testator as deduced from the consideration of the will as a whole, is at variance with a particular direction of some clause. This conflict of intention usually arises where the testator has not carefully thought out the application of the provisions of his will to all possible states of fact, and has not, therefore, foreseen the actual contingency which has caused the inconsistency. In such a case, the court, while avoiding making a will for a man who did not succeed in making one for himself, will nevertheless, if the general intention of the testator is clear, give effect to such intention, disregarding the particular intent of the particular clause. (Citations omitted)
"As a particular application of this principle in a case in which testator has indicated the result which he wishes to accomplish and the means by which he wishes to accomplish it, the result will be regarded as the general or paramount intent if there is an inconsistency between the provision and such result, and the provision is the means by which it is to be accomplished." (Citations omitted)
As to the power of a court to construe a will where the general intent is inconsistent with a clause by reason of omitted words from such clause, Page, in 4 Bowe-Parker: Page on Wills, § 30.25, states as follows:
"This power may extend to construing a will as if words were inserted therein, where it appears clearly on its face that such words were omitted solely by inadvertence, and are essential to the expression of testator's manifest intention; * * * The courts may exercise this power where the fact that words are omitted by accident does not appear until the court endeavors by means of extrinsic evidence to apply the description in the will to the subject matter." (Citations omitted)
After holding that the lower court was correct in admitting parol evidence, we now turn to the record-on-appeal to determine whether or not the lower court's findings of fact as to the decedent's intent are supported therein.
*50 Upon a review of the record-on-appeal we concur with the lower court as found in its order that "the testator's intent is clear beyond a reasonable doubt, and that intent was the named devisees were to take and enjoy the worldly goods of Austin and Maude Wood after the survivor thereof was no longer able to hold and enjoy the same."
In the case of Darpino v. D'Arpino, 73 N.J. Super. 262, 179 A.2d 527, which was relied upon by the lower court, the identical question was before the Appellate Division of the Superior Court of New Jersey. In the Darpino case the court stated on page 533, in connection with the problem facing us herein, the following:
"The testator's intent is `not to be thwarted by refinements and distinctions resting upon subtlety and ingenuity or by lack of technical accuracy in the use of words or by unduly stressing the literal meaning of a few words or by attaching to them a hard and fast meaning which is not in consonance with the setting in which they were employed.' Beals v. Magenis, 307 Mass. 547, 31 N.E.2d 20 (Sup.Jud.Ct. 1941); National State Bank of Newark v. Morrison, 9 N.J. Super. 552, 558, 75 A.2d 916 (Ch. 1950); Bank of New York v. Black, supra, 26 N.J., at p. 284, 139 A.2d 393. We consider that to uphold the claim of the plaintiffs would be to disregard the general intent and scheme of the testator and create a partial intestacy as to the residuary estate, when presumably such an intestacy was never intended. We are satisfied that fulfillment of the whole design and plan of testator's will is effected by the interpretation of the will reached by the trial court."
We therefore hold that when the general intent of a testator, as deduced from consideration of the will as a whole, is at variance with a particular direction of some clause, a latent ambiguity exists and parol or extrinsic evidence is admissible to show the actual intent of the testator. We further hold that when the parol or extrinsic evidence is clear and convincing to the point of an inescapable conviction as to the testator's intent (which is true in the case sub judice), the courts may construe a will as if words were inserted therein when such words were omitted solely by inadverence or oversight and are essential to the expression of the testator's manifest intention.
For the foregoing reasons the order appealed is
Affirmed.
LILES and MANN, JJ., concur.