NORTHCUTT, Judge.
Vincent Budny, Jr., is the personal representative of his father’s estate. He challenges the probate court’s determination that he and his half sister, Carole Ann Mikell, are to share equally as beneficiaries under the senior Mr. Budny’s will. We reverse because the ruling contradicts the will’s clear and unambiguous terms.
Mr. Budny left an October 1972 will he had executed jointly with his wife, Marie Budny, whom he survived. The will devised specific properties to the Budnys’ son, Vincent, Jr., including two houses, an automobile, a boat, four real estate lots, 75% of “our collective insurance,” specified stocks, and “my or our savings account and checking account.” To Mikell, who was Mrs. Budny’s daughter, the will made specific bequests of two real estate lots and 25% of “our collective insurance.”
By the time Mr. Budny died in August 2000, many of the devised properties had been sold, including both of the lots that had been left to Mikell. Several of the properties bequeathed to Vincent, Jr., also had been sold; all that remained was a single house, a lot, bank accounts, and personal effects. Additionally, two years before his death Mr. Budny had altered his life insurance policy to name Mikell as its sole beneficiary. Thus, the entire insurance proceeds bypassed the estate.
After the October 1972 will was admitted to probate, Mikell filed a petition for determination of beneficiaries and shares pursuant to Florida Probate Rule 5.385 and section 733.105, Florida Statutes (2000). She sought to share equally in the estate with her half brother, contending that Mr. Budny had intended such and had never expressed an intention that she should be disinherited. At the evidentiary hearing, witnesses testified that during Mr. Budny’s last hospitalization he stated that he wanted his son and stepdaughter to share equally in his estate. Vincent, Jr. conceded this, but asserted that his father was not fully lucid when he made the statement. The probate court found that it was Mr. Budny’s intent in his will and upon his death to provide for both Vincent, Jr. and Mikell equally, and declared that Mikell was a valid and legal devisee of the will and entitled to share equally in the distribution of the assets of the estate.
“The intention of the testator as expressed in his or her will controls the legal effect of the testator’s dispositions.” § 732.6005(1), Fla. Stat. (2000) (emphasis added). Where there is an ambiguity in a will, extrinsic evidence may be admitted to resolve the uncertainty so that the probate court may effectuate the true intent of the testator. Dutcher v. Estate of Dutcher, 437 So.2d 788, 789 (Fla. 2d DCA 1983). However, such aids to testamentary construction may be employed only when the testator’s intent is obscured by a discernible ambiguity or uncertainty arising from the language used. Filkins v. Gurney, 108 So.2d 57, 58 (Fla. 2d DCA 1959); see also In re Estate of Wood, 226 So.2d 46 (Fla. 2d DCA 1969). Here, the probate court made no finding that the will was ambiguous, and it was not. The clear and unambiguous terms of the will could not be altered by extrinsic evidence to, in effect, defeat all the specific bequests and put the assets into a residue to be shared equally by the beneficiaries.
When property that has been specifically devised is no longer part of the testator’s estate at the time of his death, *783 the devise fails or is “adeemed.” Estate of Murphy, 340 So.2d 107 (Fla.1976); In re Estate of Sweet, 254 So.2d 562 (Fla. 2d DCA 1971). Florida recognizes an exception to this rule: Extrinsic evidence can prevent the ademption of a specific bequest if the bequeathed property can be traced to existing assets and if the evidence reflects that the testator did not intend by his disposal of the property to alter the testamentary scheme contained in his will. In re Estate of Jones, 472 So.2d 1299, 1301 (Fla. 2d DCA 1985).
But that exception is inapplicable here. One of the lots devised to Mikell was sold shortly after Mr. and Mrs. Budny executed the will in 1972. Mikell testified that Mr. Budny sold the other lot that had been meant for her two years before his death. She posited that the proceeds remained in a bank account listed in the estate inventory, but neither the inventory nor any bank account records were introduced into evidence. In any event, Mi-kell’s assertion that the proceeds remained in the account was contradicted by her own testimony that her stepfather had sold the lot to meet living expenses. This fact also disproved the notion that when selling the lot Mr. Budny nevertheless intended to maintain the testamentary scheme set forth in his will. See Eisenschenk v. Fowler, 82 So.2d 876 (Fla.1955). Finally, even if the evidence had supported excepting the bequests from ademption, this would have applied only to assets associated with those specific bequests; it would not have entitled Mikell to share equally in the assets of the estate.
Reversed and remanded for proceedings consistent with this opinion.
FULMER and KELLY, JJ., concur.