[Civ. No. 5415.   Fourth Dist.   July 24, 1956.]

Estate of GILBERT SMALL PEYTON, Deceased. ARNOLD TAYLOR PEYTON et al., Appellants, v. HAZEL S. PEYTON, Respondent.

Procopio, Price, Cory & Schwartz for Appellants.

Atherton & Atherton for Respondent.

BARNARD, P. J.—This is an appeal from an order determining heirship and decreeing that the sum of $10,154.86 be distributed to the surviving widow as a part of the residuary estate. This amount is the testator's share of the proceeds from the sale of certain real estate mentioned in the second paragraph of the will of Gilbert S. Peyton, who died at 1:45 a.m. on December 15, 1954. This second paragraph, so far as material here, reads:

"To my three sons, Gilbert Lewis Peyton, Wayne German Peyton, and Arnold Taylor Peyton, in equal shares, I give my interest in the New York property, which consists of the following:

"Property at Crown Street and Bedford Avenue, Brooklyn, New York."

The seventh paragraph of this will provided as follows: "All the rest, residue and remainder of my property, real, personal and mixed, and of whatever nature, kind and description of which I shall die seized or possessed, or to which I may be entitled, which shall include all my bank accounts and all of my insurance,. . . I give, devise and bequeath to my wife, Hazel S. Peyton."

Hazel S. Peyton was married to the deceased approximately three years prior to his death. His former wife, Leonore German Peyton, had died in San Diego in November, 1942. She owned a half interest in the real property here involved, on which there was a brick building. The other half of this property was owned by her brother Gale T. German. By her will she gave her interest in this property to her husband and their three sons, a one-fourth part to each. As a result, Gilbert S. Peyton and his three sons each acquired an eighth interest in this real property.

It appears, without question, that this real property was sold, that the full purchase price was paid, and that title passed to the purchaser on November 16, 1954. On November 17, 1954, Gale T. German, who lived in New York, wrote to Gilbert S. Peyton enclosing the checks given for the purchase price, amounting to a total of $79,692.81, saying that the bank refused to accept them for deposit (on the ground that the power of attorney he held was not sufficient) until they were endorsed by Mr. Peyton and the three sons, and asking him to sign the checks "and pass them along to the boys to sign, and have the last one return them to me." These funds were later deposited in the New York bank in an account under the name of "Gilbert S. Peyton & Gale T. German or survivor."

On December 10, 1954, Gale T. German drew checks on that account representing most of the net proceeds of this sale; a check to himself for $35,000, one to Gilbert S. Peyton for $8,750, and a check for $8,750 to each of the three sons. These checks required the signature of Gilbert S. Peyton and were sent to him and received by him on December 13, 1954. He signed the checks on that day and forwarded their checks to the three sons and to Gale T. German. He endorsed his own check, making it payable to a bank in Long Beach in which he carried his checking account. That check was mailed to the Long Beach bank on December 13 and was credited to his account in that bank on December 15, but obviously several hours after he had died. These checks were all paid by the New York bank on which they were drawn.

On August 18, 1955, the executor filed a petition for determination of heirship, setting forth the second and seventh paragraphs of the will and alleging that during a period of time which included the decedent's death, the "manager" of the New York property was in the process of liquidating said property; that on December 13, 1954, the decedent received a check dated December 10 for $8,750, "representing the bulk of his interest in the New York property"; that he endorsed said check for deposit by mail in his checking account in the Long Beach bank; that the executor has since received the sum of $1,404.86, representing the remainder of the decedent's share "in the distribution from the sale of the New York property" and his share of refunds on certain insurance policies; that the total of all proceeds from the New York property is $10,154.86; and that the three sons of the decedent claim this amount under the second paragraph

of the will, and the widow claims it under the seventh paragraph. The prayer is that the court determine who are entitled to distribution of this portion of the estate. The widow filed an answer to the petition alleging that the property mentioned in the second clause of the will was sold by the decedent in his lifetime; that he did not own the same at the time of his death; that the proceeds of that sale passed to her under the seventh clause of the will; and that she is entitled to have that amount distributed to her.

The matter was submitted on stipulated facts and on various documents which were introduced as exhibits. The only reference to a partnership which appears in the evidence is the following. A letter written by Gale T. German on September 12, 1955, to the widow's attorney was introduced. In this letter German stated that title to the property on Bedford Avenue passed on November 16, 1954, and that the building was sold for cash. He also stated:

"The building on Bedford Avenue and the Islip lots were handled as a partnership joint venture and we yearly made out a partnership return to the Internal Revenue Bureau and the partnership account was kept in the then Corn Exchange Bank & Trust Company that required both Mr. Gilbert S. Peyton and my signatures and naturally, all of the money received from the sale of the Islip lots and the Bedford Avenue building was deposited in that account."

There was also introduced a copy of a "partnership return cf income" for 1953. The return was in the name of "Gale T. German et al" and stated that the principal business activity, and also the nature of the organization, was "joint venture." It listed certain rents as received from "brick building," and named as partners Gale T. German, Gilbert S. Peyton and the three sons. A similar partnership return for 1954 was also introduced in evidence.

The court filed a written decision reviewing the facts and expressing the opinion that the title to the property having passed and individual checks to the interested parties having been drawn and delivered, the real property in question was completely obliterated; and that the proceeds would pass to the widow "in spite of" the existence of any such partnership. Later, an "Order of Court" was filed finding that the sum of $10,154.86 was the interest of the testator in the proceeds from the sale of real estate in New York, which sale was made prior to his death; that all his right, title and interest in said real estate was disposed of in his lifetime; that this

amount represented his interest in the proceeds from the sale of real estate, and should be distributed to the widow as a part of the residuary estate pursuant to the seventh paragraph of the will; and ordering and decreeing that this amount be distributed to the widow subject to the further administration of said estate.

The three sons have appealed from this order. They contend that the testator did not own any interest in the real estate described in the second paragraph of the will; that what he owned was an interest in a partnership which owned and held the legal title to that land; that an interest in a partnership is personalty and not an interest in land; that the testator's interest in the partnership never changed but the partnership merely altered its own assets; that death did not terminate the partnership; that the partnership funds were still intact in the partnership bank account at the testator's death; and that these partnership funds passed to them, since the testator intended to bequeath his interest in the partnership to them. It is further argued that the evidence, consisting of the statement made by Gale T. German in his letter of September 12, 1955, and the two partnership income tax returns, conclusively shows the existence of such a partnership; and that the respondent is inconsistent in claiming that there was no partnership since in that event the amount in question would have passed to Gale T. German as the surviving joint tenant in the New York bank account.

It may first be observed that Gale T. German has made no claim to this money, so far as here appears. Also, there is no evidence that the partnership, if it existed, ever held the legal title to this land. Everything in the record would tend to indicate the contrary. Assuming that some kind of a partnership existed for some purpose, the evidence is not sufficient to show that the testator's interest in this land was intended to be transferred to the partnership, or that it ever became a part of the partnership assets. ▉ While a partnership may be formed by oral agreement, and land standing in the name of one of the partners may under some circumstances be treated as partnership property, a clear showing which discloses such an understanding and intention among the partners is required. (*Perelli-Minetti* v. *Lawson*, 205 Cal. 642 [272 P. 573].) There is nothing here to indicate that the testator's interest in this land was ever conveyed to the partnership, and the evidence is not sufficient to establish an

intention that it was to become partnership property. There is no evidence that the land was used in any business conducted by the partnership, that it was intended as a contribution to the assets of a business to be conducted, or that such a partnership was engaged in any sort of business. When the land was sold the checks for the purchase price were made payable to the individual owners, and the fact that the proceeds were immediately distributed to the owners as individuals indicates that the partners did not consider the land itself as partnership property. There was no real partnership in the ownership of the land in the usual sense, and the most that appears is that what Mr. German referred to as a partnership joint venture was actually merely a convenient arrangement for handling the rentals from the property and paying the taxes and other expenses.

Even under the theory that what the testator owned was a partnership interest in this land, and that he intended to bequeath that interest to the sons, the fact remains that neither he nor the partnership had any interest in the land at the time of his death, since the land had previously been sold and fully paid for. Any interest he had to give, whether a partnership interest or not, ended when the land was sold before he died.

The real question on this appeal is not as to whether some sort of partnership existed, but is whether the provisions of the second paragraph of the will constitute a specific legacy or a general legacy that would also apply to and cover the proceeds from the sale of the specific property mentioned.

By the terms of his will the testator gave his interest in a definite parcel of real property, whatever the form of that interest, to his sons. This was a specific gift of particular property, and the testator no longer owned that property at the time of his death. Under established rules it must be held that this was a specific legacy, and that the sale of the testator's interest in the land in question during his lifetime, with the transfer of title thereto, constituted an ademption of said legacy. (*Estate of McLaughlin,* 97 Cal.App. 481 [275 P. 874]; *Estate of Benner,* 155 Cal. 153 [99 P. 715]; *Estate of Babb,* 200 Cal. 252 [252 P. 1039]; *Estate of Sorensen,* 46 Cal.App.2d 35 [115 P.2d 241].)

While the testator originally intended his interest in this real property to go to his sons, he failed to provide for a similar disposition of the proceeds from the sale of that interest under the circumstances which later developed. He did not

change his will after he knew that the land had been sold, and the provisions of the will itself must be given effect. The findings made by the court are sustained by the evidence.

The order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied August 21, 1956, and appellants' petition for a hearing by the Supreme Court was denied September 13, 1956.