16 Cal.App.3d 106 (1971)
93 Cal. Rptr. 810
Estate of ESTHER ZAHN, Deceased.
SECURITY PACIFIC NATIONAL BANK, as Executor, etc., Petitioner and Respondent,
v.
MARGARET ZAHN et al., Claimants and Appellants,
SALVATION ARMY et al., Claimants and Respondents.
Docket No. 35977.
Court of Appeals of California, Second District, Division Four.
March 18, 1971.
*109 COUNSEL
Morris Lavine for Claimants and Appellants.
Marcus Muskat for Petitioner and Respondent.
Meserve, Mumper & Hughes, Downey A. Grosenbaugh, Thomas C. Lynch, Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Claimants and Respondents.
OPINION
JEFFERSON, J.
Margarete Clara Zahn (also known as Margaret Zahn), Paul Zahn and Otto Zahn, three first cousins of the decedent who reside in Germany, appeal from the judgment (decree determining interest in estate) or order of distribution.[1]
Esther Louisa Zahn, a lifelong spinster, died on August 3, 1967, leaving *110 a holographic will dated May 12, 1960, which was duly admitted to probate on September 1, 1967. Security Pacific National Bank (formerly Security First National Bank, previously known as Farmers and Merchants National Bank) was appointed executor of her estate which had an approximate value of $600,000 to $700,000 principally in real estate and trust deeds on real estate. (1a) Petitions to determine interests in the estate were filed by the executor, by the three appellants claiming to be the decedent's heirs at law, by the Salvation Army, and by the Attorney General of the State of California. (Prob. Code, § 1080.)
The will by its terms provides as follows:
"I, Esther Zahn of 4701 Keniston Ave. Los Angeles California make and publish this my last will and Testament as follows:
"I revoke all other wills and Codicils heretofore made by me and appoint the Farmers Merchants National Bank corner 4th and Main St, Los Angeles, Cal as Executor of this will.
"I want to start a Rest Home at the corner 3503 So. Flower St Los Angeles, California for Christian women and girls who have no relatives, no smokers or drinkers only deserving citizens who are Native Californians. Perhaps the Salvation Army can recommend them. I would like a new Modern Building to be erected at the corner of 3503 So. Flower St Los Angeles, Cal to be called `The Zahn Memorial.' This in memory of my father and mother Paul and Louisa Zahn who came to Los Angeles, Cal in 1887. There are enough 1st Trust Deeds and Real Estate to sell and money to start a new Building.
"My home at 4701 Keniston Ave Los Angeles, Cal not to be sold. I wish to will to the Salvation Army to be used as a Music Home for Deserving Christian Students in my memory.
"Have relatives in Germany. Only 1st 2nd and 3rd Cousins. I will them Care Packages or $10 per month as long as they live, If they need help.
"August Hansen, my caretaker at 4701 Keniston Ave Los Angeles, Cal. $5000 cash. He takes care of my 10 Birds and One Dog Misty Fox Terrier.
"Executed at Los Angeles California this 12th Day of May 1960. Esther Zahn"
The trial court received oral evidence in support of the contention of the Salvation Army that the decedent intended to make a charitable gift of all trust deeds, real estate, and money not otherwise specifically bequeathed to other named heirs to The Salvation Army as trustee to carry out the charitable purposes of her will; that The Salvation Army was the intended *111 devisee of the decedent's home; and that the cy pres doctrine applied to impress the Flower Street property and implementing funds with a trust to establish and maintain a music home for Christian students in memory of Esther Zahn.
Thereupon the trial court determined that the will evinced a general charitable intent and ruled that August Hansen should receive $5,000 in cash; that appellants and the decedent's six other living relatives should each receive $10 per month for life or until he or she is no longer in need; that the Salvation Army should receive the decedent's home on Keniston impressed with a charitable trust to establish a music home for deserving Christian students upon an appropriate site; that the Salvation Army be appointed trustee to receive and to use the proceeds from the first trust deeds, real estate and money in the estate to establish a rest home for native Californian Christian women and girls who are without relatives and who neither smoke nor drink, the home to be named "The Zahn Memorial."
Plaintiffs do not dispute that portion of the decree directing cash distribution to August Hansen, to appellants and to the six remaining relatives surviving. Plaintiffs, however, contend as follows: (1) the gift of property at 3503 South Flower Street (together with cash proceeds of trust deeds and real estate) constitutes a specific gift which adeemed; (2) the gift of the decedent's residence is a specific gift which adeemed; (3) in the absence of a residuary clause, the adeemed gifts pass intestate with the residue of Miss Zahn's estate; (4) because the charitable gift would deprive the state of inheritance taxes, the intervention of the Attorney General on behalf of the charitable interests is improper; (5) gifts to religious institutions which are exempt from taxes violate the Fourteenth Amendment of the federal Constitution and the trial court's determination as to the charitable gifts violates Civil Code section 2279; (6) the trial judge acted without jurisdiction; (7) the motions of the heirs for different judgment (Code Civ. Proc., § 663) and for new trial were improperly denied. For the first time on appeal, appellant argues that the testamentary gifts to the Salvation Army are invalid in that they purport to forbid or restrict the use or occupation of real property because of the user's religion in violation of due process and equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution of the United States and as prohibited by Civil Code, section 53. We conclude that appellants' contentions are devoid of merit.
Esther Zahn never married, lived alone for over 30 years after the death of her parents, and left no surviving relatives in this country. During her lifetime she had sent Care packages periodically to her "distant relatives," *112 first, second and third cousins who lived in East and West Germany with whom she had not corresponded for four years prior to her death.
The decedent devoted substantial time to charitable and community work and especially engaged herself with projects of the Salvation Army, for which she had supreme respect. Esther Zahn loved music, belonged to her church choir, supported the training of young opera artists and wanted the Salvation Army to have the use of her Keniston Avenue home for band practice. She loved her deceased parents, particularly her father whose business acumen she successfully cultivated and perpetuated in her own life, and she wished to commemorate them with an appropriate memorial. She neither smoked nor drank alcoholic beverages and she was concerned about the situation of young girls who came alone to Los Angeles and who needed a safe place to live while working or attending school. During the early 1960's she planned a building which she wished to have erected on the site of her parents' former home to establish a residential haven for young women which would be operated by the Salvation Army. However, the property lies within the Hoover Urban Development project and after Miss Zahn's death the property was sold to the Hoover Redevelopment Agency. It was stipulated that the Redevelopment Agency had jurisdictional authority to condemn and take the property and to provide for its use and to dispose of it or permit it to be used for purposes which it may determine at the time of disposal or use. No specific use was assigned to this particular piece of property by the time of trial but its tentative zoning was at variance with the establishment of the proposed rest home.
The Salvation Army was conceived in London about 134 years ago to aid homeless women and children in the severe economic hardships following the Industrial Revolution. The organization qualifies under its articles of incorporation to receive the testatrix' gifts and to administer them in accordance with the wishes expressed in her will. Its services are available to all religious and ethnic groups, but members are prohibited from smoking and drinking and it is willing to undertake the administration of the decedent's estate in keeping with her expressed intentions. In fact, there was testimony that the organization was planning to expand facilities for its "Women's Emergency Home" in Los Angeles before it learned of the existence of this estate. Brigadier Taylor of the Salvation Army testified that the organization proposed to erect and furnish a new building on another site, that they would charge no trustee's fee for administering the Zahn estate for this purpose, that they would pay the operating costs and would name the building "The Zahn Memorial" in memory of the decedent's father and mother. (2a) They proposed to give preference to the class of persons described in the decedent's will although they would not turn away others in need while the facilities were not fully utilized.
*113 Since the Keniston Avenue home property is presently zoned R-1 and a music home is not a permissible use thereunder the Salvation Army proposed that the proceeds from its sale be used to construct a music conservatory at the site of Upland College, which is destined to become a training school for Salvation Army officers; alternatively the proceeds might be used to endow a music room presently being constructed as part of the Salvation Army's Glendale Neighborhood Corps Center.
Appellants' first three assignments of error involve the same issue: Were the gifts of the Flower Street and Keniston Street residences and the assets designated for use incidental thereto, specific which were adeemed, or does the doctrine of cy pres apply to preserve the testatrix' charitable intentions and prevent these assets from passing intestate with the residue?
(3) There is no evidence in the record and no specific portion of the reporter's transcript is referred to in support of the appellants' declaration that the decedent knew before the date of her death that the Flower Street property would be taken by the Hoover Redevelopment Agency and would thus become unavailable for the use proposed by her will. Miss Zahn died August 3, 1967, and the property was not acquired by the agency until April 10, 1969. "`"Ademption of a specific legacy is the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will which prevents its passing by the will, from which an intention that the legacy should fail is presumed."' [Citation.] A change in the form of property subject to a specific testamentary gift will not effect an ademption in the absence of proof that the testator intended that the gift fail. [Citations.]" (Estate of Mason, 62 Cal.2d 213, 215 [42 Cal. Rptr. 13, 397 P.2d 1005].)
(4) The record is replete with evidence and testimony extrinsic to the will which supports the trial court's finding that the testatrix demonstrated a general charitable intention in establishing these gifts. "The fact that the ... [testatrix] may have been motivated by a desire to perpetuate the memory of named persons does not necessarily destroy the charitable character of the bequest. [Citations.]" (Estate of Mayer, 237 Cal. App.2d 549, 552 [47 Cal. Rptr. 44].) In view of the trial court's determination, the gifts do not fail because the charitable plan of disposition outlined in the will is impossible, but the application of the doctrine of cy pres is justified to preserve the testatrix' charitable purposes. Since neither of the parcels of real property is presently suitable for carrying out the testatrix' declared intentions, the court properly directed that her charitable purposes be given effect at some other suitable locations. "It being established that the *114 bequest actually is a charitable one, it becomes the duty of the court, if possible, to apply cy pres." (Estate of Faulkner, 128 Cal. App.2d 575, 579 [275 P.2d 818].) The purpose of the application of the cy pres doctrine is to prevent the failure of valid charitable trust gifts. (Estate of Tarrant, 38 Cal.2d 42, 48-49 [237 P.2d 505, 28 A.L.R.2d 419].)
(1b) Appellants next contend that the Attorney General lacked standing to intervene on behalf of the charitable institution since a determination of charitable intention reduces the amount of inheritance taxes to be paid the state. Not only does public policy actually favor charitable gifts but the state acts in parens patriae with respect to the management of public charities and trusts through her attorney general (People v. Cogswell, 113 Cal. 129, 136 [45 P. 270]) and the Attorney General is a necessary party to proceedings affecting the disposition of charitable trust assets. (In re L.A. County Pioneer Society, 40 Cal.2d 852, 861 [257 P.2d 1].) Moreover, "... where there is any question of validity of a purported charitable trust in a will, it would seem that there is an a fortiori reason for the Attorney General's participation, since it is only he who, representing the public which benefits by a charitable trust, will or can act as advocate in support of the validity of the charitable provision." (Estate of Ventura, 217 Cal. App.2d 50, 57 [31 Cal. Rptr. 490].)
(2b) Plaintiffs further contend that the gift to forward the purposes of a tax exempt religious organization is prohibited by the Fourteenth Amendment to the federal Constitution. This objection is argued on the ground that the Salvation Army is discriminatory and is dedicated to proselytizing the conversion of persons to the Christian religion. The cases cited by appellants treat the issue of racial segregation restrictive covenants on the use of property dedicated to a municipality on trust (Evans v. Abney, 396 U.S. 435 [24 L.Ed.2d 634, 90 S.Ct. 628]; Evans v. Newton, 382 U.S. 296 [15 L.Ed.2d 373, 86 S.Ct. 486]). These decisions establish that because racial segregation constituted an inseparable element in the testator's intent, the trust failed and in the absence of alternative provisions, the trust property reverted to the testator's heirs.
(5) Appellants argue on the ground that the restriction on use of the testatrix' property is invalid and renders the charitable bequests void or lapsed. Civil Code section 2279, however, has no application to the present case. "The rule of cy pres is one of construction, the object of which is `to permit the main purpose of the donor of a charitable trust to be carried out as nearly as may be where it cannot be done to the letter.' (14 C.J.S., p. 512, § 52.) A trust ceases if the object becomes impossible or unlawful. (Civ. Code, § 2279.) `If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable *115 or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.' [Citation.]" (Society of Cal. Pioneers v. McElroy, 63 Cal. App.2d 332, 337 [146 P.2d 962].) The trial court in the present case found that the facts establish the testatrix' intention to make a general charitable bequest entitled to be saved by the application of the cy pres doctrine, and that the creation of the trust is neither prevented nor does it lapse pursuant to Civil Code section 2279 or any other legal theory.
(2c) The trial court had no opportunity to consider the contention raised by appellants for the first time on appeal that the proposed charitable gifts of the testatrix to benefit Christian women and deserving Christian music students, respectively, constitute invalid religious restrictions under Civil Code, section 53[2] and the Fourteenth Amendment. Section 53 of the Civil Code was repealed in 1959 and was reenacted with relevant subdivisions (a) and (b) in their present form as part of the Unruh Civil Rights Act (Civ. Code, §§ 51-53), dealing with public accommodations and housing. Basically, Civil Code section 53, inter alia, voids every provision in a written instrument relating to real property which purports to forbid or restrict the transfer or use of real property because of the user's or occupier's religion. In our judgment, there is nothing in Civil Code section 53 nor in the Fourteenth Amendment which applies in the case at bench, even if it be assumed that the will or the probate decree is "a written instrument relating to real property" within the meaning of the statute. There is nothing in the testamentary disposition of the will which forbids or restricts the use of real property because of the user's or occupier's religion. It is, of course, true that the devisee is a religious institution and the purpose of the testatrix was to (1) start a rest home for Christian women and girls, etc. and (2) will her *116 home "to be used as a music home for deserving Christian students." Neither the will nor the decree forbids, restricts or limits the use of the property to Christian women or students, nor is there anything in the record to indicate that it is the intention of the Salvation Army so to do.
The testatrix' will exhibits the intention to establish a charitable trust for a designated special class of members of the public, a limitation generally permitted in the absence of designation of specific individuals. The class designated does not contravene but is in fact coextensive with the policies of the Salvation Army, which agrees to assume the responsibilities of trust administration consistent with the testatrix' expressed desires. (See Howard Savings Inst. of Newark v. Peep (1961) 34 N.J. 494 [170 A.2d 39, 41, 45].) That organization generally is recognized to engage in activities calculated to further the expression of nonsectarian Christian moral and ethical standards. It is well established that the government may neither establish nor interfere with a religion under the provisions of the First and Fourteenth Amendments. (Walz v. Tax Commissioner of the City of New York, 397 U.S. 664 [25 L.Ed.2d 697, 90 S.Ct. 1409].) Religious sects are entitled to establish and maintain their own parochial education systems, for instance, even though religious segregation in a public school is prohibited. (See Evans v. Newton, 382 U.S. 296, 300 [15 L.Ed.2d 373, 377, 86 S.Ct. 486].) In the same manner it would appear that an organization established and devoted to nonsectarian religious purposes is entitled to receive and administer trust funds on a charitable bequest consistent with its established aims.
Finally, the decree of the trial court takes into consideration the desirability of promoting the testatrix' intentions while at the same time assuring the fullest and best use of the trust funds for the public welfare. Its decree provides in pertinent part, "The Salvation Army or any other trustee is directed to seek out and give preference to those women and girls who fit the description set forth hereinabove. If the classification of beneficiaries proves to be too restrictive, then the trustee should seek further instructions from the court."
(6) Appellants further contend that the trial judge lacked authority and jurisdiction to sit when the matter was heard and determined. On March 13, 1969, and on June 13, 1969, respectively, Judge Faries, "Retired Judge of the Superior Court" was assigned by the Chief Justice of the California Supreme Court Roger J. Traynor, to sit as a superior court judge from April 1, 1969, to September 30, 1969. The matter came before Judge Faries during this period and was passed upon by him prior to the expiration of his term. The validity of his assignment is established by Californa Constitution, article VI, section 6.
Appellants cite no authority for their final assignment of error in which *117 they contend that their motion for new trial was improperly denied. The trial court in the sound exercise of its discretion denied the motion and there is no showing of abuse.
The attempted appeal from the order denying motion for a new trial is dismissed. The judgment appealed from is affirmed.
Files, P.J., and Irwin, J.[*] concurred.
A petition for a rehearing was denied April 7, 1971, and appellants' petition for a hearing by the Supreme Court was denied May 26, 1971.
NOTES
[1] Their attempted appeal "from the orders denying the motion for a new trial and for a new and separate judgment" is dismissed because these orders are not separately appealable but are reviewable upon appeal from the judgment.
[2] "(a) Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance, encumbrance, leasing, or mortgaging of such real property to any person of a specified race, color, religion, ancestry, or national origin, is void and every restriction or prohibition as to the use or occupation of real property because of the user's or occupier's race, color, religion, ancestry, or national origin is void.

"(b) Every restriction or prohibition, whether by way of covenant, condition upon use or occupation, or upon transfer of title to real property, which restriction or prohibition directly or indirectly limits the acquisition, use or occupation of such property because of the acquirer's, user's, or occupier's race, color, religion, ancestry, or national origin is void.
"(c) In any action to declare that a restriction or prohibition specified in subdivision (a) or (b) of this section is void, the court ... takes judicial notice of the recorded instrument or instruments containing such prohibitions or restrictions in the same manner that it takes judicial notice of the matters listed in Section 452 of the Evidence Code."
[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.