113 Cal.App.3d 167 (1980)
169 Cal. Rptr. 648
Estate of LUCILLE ANN AUSTIN, Deceased.
BETTY GULDBERG, Claimant and Appellant,
v.
SHRINE HOSPITAL FOR CRIPPLED CHILDREN, Claimant and Respondent.
Docket No. 5274.
Court of Appeals of California, Fifth District.
December 11, 1980.
*169 COUNSEL
Paul A. Ginsburg for Claimant and Appellant.
King, Eyherabide, Friedman, Robinson & Pearl, Stephen Eyherabide and Peter W. Beckman for Claimant and Respondent.
OPINION
ANDREEN, J.
The testatrix, Lucille Ann Austin, executed her will on March 9, 1977. Two specific bequests were made to a friend, Betty Guldberg, who is appellant herein. The first bequest was an oil portrait of the testratrix' mother and the other was as follows: "4(L) The promissory note which I own and hold, made by GARY GRENZ, together with the deed of trust or mortgage securing said promissory note, I give to my friend, BETTY GULDBERG; providing that in the event BETTY shall predecease me or shall not survive distribution of my estate, then in that event said promissory note, together with the securing deed of trust, I give to BETTY's mother, DOROTHY GULDBERG, and should DOROTHY likewise predecease me or not survive the distribution of my estate, then such promissory note, together with the securing deed of trust, I give to the heirs of DOROTHY GULDBERG by right of representation."
The will is somewhat unique, in that it contains nine separate legacies ranging from $2,000 to $15,000 to individuals and organizations. In addition, there are three bequests; the two mentioned above and a dog. The remainder of the estate is given to the respondent Shrine Hospital for Crippled Children, which is also the beneficiary of a $5,000 legacy.
The case is before us because the Grenz note given to Betty Guldberg was paid in full on July 1, 1977, about four months after the will was *170 executed. The payoff was $17,065.88 and was made contemporaneous with the sale of the property which was the underlying security. The note did not include a due on sale clause.
Five days after the payoff, the note proceeds were placed in a savings account which at that time had a balance of $7,727.67 (plus a small amount of accrued but unposted interest).
Thereafter, on August 9, 1977, the testatrix withdrew $20,000 from the account and loaned it to the Inmans. She received in return a promissory note secured by a deed of trust. The note was due in six months.
On January 14, 1978, about 10 months after the will was executed, the testatrix died without having changed her will.
The Inman note was paid off in full shortly thereafter, and the proceeds rest in an estate savings account.
The short trial had no testimony as to extrinsic evidence of the testatrix' intent.
The court below held that the legacy was specific and adeemed, so that it fell into the residue of the estate and thus went to the respondent hospital.
(1) The scope of our review is delineated in Estate of Russell (1968) 69 Cal.2d 200, 213 [70 Cal. Rptr. 561, 444 P.2d 353]. We are not bound by the trial court's construction of the will since there is no extrinsic evidence which is in conflict.
(2) "The intention of the testator should be carried out as nearly as possible, and this is the basic rule of interpretation, to which all others yield...." (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 159, p. 5674.)
The parties have cited numerous authorities which purport to assist one side or the other. We will discuss each of them.
The respondent hospital relies on Estate of Calori (1962) 209 Cal. App.2d 711 [26 Cal. Rptr. 281]. The case is readily distinguishable. The testatrix bequeathed a promissory note secured by real property to appellant. *171 There was no evidence as to the terms of the note, whether it was payable in installments or in a lump sum and whether the consent of the testatrix to its payment in full was required or given. There was no evidence identifying the cash as part of the estate at date of death. That is, the funds were not traceable into an account or another promissory note.
The trial court's finding of ademption was affirmed. The reviewing court found that there was nothing in the case to show that the bequest was general rather than specific. Of assistance to respondent here is the statement by the court that: "It is difficult to regard full payment of the note as a mere change in form...." (Id., at p. 713.)
Estate of Calori has rested on the shelves since 1962 without benefit of citation, except in Estate of Mason (1965) 62 Cal.2d 213 [42 Cal. Rptr. 13, 397 P.2d 1005]. In the latter no ademption was found.
Respondent cites Estate of Peyton (1956) 143 Cal. App.2d 379 [299 P.2d 897]. However, that too is distinguishable. In Peyton, the testator voluntarily sold his fractional interest in the land which was the subject of a specific bequest to his sons. In the case at bench, there was no voluntary sale.
Finally, respondent cites Estate of McLaughlin (1929) 97 Cal. App. 481 [275 P. 874] for the fact that if proceeds are commingled there is an ademption. However, in the instant case there was but one deposit into and one withdrawal from the account, so tracing is easy. (Hicks v. Hicks (1962) 211 Cal. App.2d 144 [27 Cal. Rptr. 307].)
We turn to an examination of appellant's cases.
Estate of Mason, supra, 62 Cal.2d 213 is distinguishable. The testatrix devised her home to appellant. Several years later, she became mentally incompetent and a guardian was appointed of her estate which sold the home and used all but $556.66 of the proceeds thereof for her support. The trial court held that there was a partial ademption to the extent that the funds had been spent, so only the remainder of the proceeds, the $556.66, be distributed to appellant. The remainder of the estate, $6,808.08, was ordered distributed to the residuary legatees. The high court reversed and held that the residuary legatees must contribute in full to satisfy the appellant's specific gift. To hold otherwise would *172 permit the guardian to frustrate its ward's testamentary plan. The court found an analogy in the statutory rules governing abatement of testamentary gifts to satisfy debts and expenses during probate or for family allowance.
The case is significant, however, in that it sets a course away from the strict rules of ademption, and draws a clear distinction between an extinction of a legacy by some act of the testator and the act of a third person. If the testator has disposed of a specific legacy, it may be presumed that he intended that the gift fail. Where it is done by act of a third person, in Mason a guardian, no such intent can be presumed.
Estate of Ehrenfels (1966) 241 Cal. App.2d 215 [50 Cal. Rptr. 358] adds nothing to appellant's position. In it, a guardian exchanged Standard Oil stock for stock in a mutual fund. The trial court held there was no ademption and that the beneficiaries should receive the stock in the mutual fund. This was affirmed on appeal.
In Estate of Newsome (1967) 248 Cal. App.2d 712 [56 Cal. Rptr. 874], certain real property was devised to the testator's wife and other real property devised to his daughter. He then sold one of the parcels of real property which had been devised to the wife. At time of death, the proceeds were in a savings account. The court held that there was no ademption because there was no residuary clause in the will, evidencing an intent by the testator to dispose of all of his estate through the specified devises and bequests and not to cause any thereof to fail by his voluntary transmutation of the property. In the instant case, of course, there is a residuary clause.
Estate of Creed (1967) 255 Cal. App.2d 80 [63 Cal. Rptr. 80] involved a will which devised real property in trust for the testator's grandchildren. For estate tax purposes, a corporation was formed to hold the property, and the testator made inter vivos transfers of the stock to the grandchildren to the maximum allowed by the exemptions and exclusions under the federal gift tax law. The trial court held and the appellate court affirmed that the intent of the testator to have no ademption was manifest. There was merely a change in form, whereby the real property was held through the device of a corporation formed to effectuate the transfer to the grandchildren with a minimum of estate taxes.
*173 The above rather lengthy discussion of the authorities serves to prove the wisdom of Witkin at 7 Witkin, Summary of California Law (8th ed. 1974) Wills and Probate, section 159, pages 5675-5676 where the author states: "In cases dealing with interpretation of wills, as in other controversies, counsel and courts draw freely upon the enormous volume of reported decisions. But in ascertaining the intention of a particular testator decisions in other cases are seldom controlling. `Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value.' (Estate of Henderson (1911) 161 C. 353, 357, 119 P. 496; see also Estate of Wilson, supra, 184 C. 67; Estate of Keller, supra, 134 C.A.2d 238 [`no two wills are exactly alike and but few are sufficiently similar in the wording of depository provisions so that a decision interpreting one would be of any great help in interpreting another'].)"
(3a) In discerning the intent of the testatrix, we look first at the will. It is remarkable for the number and diversity of the legacies and bequests. It demonstrates a mind that enjoyed giving to many beneficiaries. Although there is a residuary clause in the will, there is a manifest intention to particularize the disposition of assets.
There is nothing in the record to suggest that the testatrix did anything to initiate the payoff of the Grenz note. It was paid incident to the sale of the property which was the security of the note.
There is nothing to show that the testatrix had a change of mind as to the appellant being a proper beneficiary of her estate. The oil portrait of the testatrix' mother remained a bequest to appellant.
She did nothing with reference to the proceeds except deposit them in a manner which was easily traceable and invested them in an almost identical type of asset  a promissory note secured by a deed of trust.
In determining whether the change is in form only, California courts have lately tended to avoid strict rules of ademption; rather they look to the inferred or probable intent of the testator under the particular circumstances. (4) The reasoning of these more modern cases was crystallized and confirmed by the following statement in Estate of Mason, supra, 62 Cal.2d at page 215: "`"Ademption of a specific legacy is the extinction or withdrawal of a legacy in consequence of some act of *174 the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will which prevents its passing by the will, from which an intention that the legacy should fail is presumed."' [Citations.] A change in the form of property subject to a specific testamentary gift will not effect an ademption in the absence of proof that the testator intended that the gift fail. [Citations.] ..." (See also Estate of Zahn (1971) 16 Cal. App.3d 106, 113 [93 Cal. Rptr. 810].)
(3b) In absence of proof of an intent that the gift fail, there should be no ademption. (Estate of Mason, supra, 62 Cal.2d 213, 215; Estate of Stevens (1945) 27 Cal.2d 108, 116 [162 P.2d 918]; Estate of Holmes (1965) 233 Cal. App.2d 464, 469 [43 Cal. Rptr. 693].)
We find that there is no indication of an intent by the testatrix to adeem, and that the judgment must be reversed.
We turn to appellant's contention that she is entitled to the amount of the Inman note, which was approximately $3,000 more than the payoff of the Grenz note.
In Estate of Shubin (1967) 252 Cal. App.2d 588 [60 Cal. Rptr. 678], the court held that there was no ademption and that the beneficiary of the specific devise should receive a more valuable piece of property. The will disposed of a piece of property which was subsequently condemned and the decedent took the proceeds, added approximately $2,000 to it and bought a new piece of property within nine days. The court was aided in determining the testator's intention because he had written the address of the new property in the will next to the dispositive provision.
And in Estate of Cooper (1951) 107 Cal. App.2d 592 [237 P.2d 699], the testator told his attorney simply "My car to Miss Hage." The attorney wrote "That certain Hudson Automobile, now owned by me." After the will was executed, the testator sold his car and a month later bought a new Hudson, which he owned at his death. The court had no difficulty in finding no ademption, citing a New York case which held that a bequest of a diamond brooch would not be adeemed where subsequent to the execution of the will the testatrix traded it in on a more expensive diamond brooch.
*175 Shubin and Cooper are of no assistance to appellant. In each, once the court had found no ademption, it could do nothing other than order the beneficiary to take the property in its present form. The property was unique and there was no practical way to reduce its value to that of the property described in the will.
On the other hand, in this case the note has been converted to cash because it was paid off when due. Money is divisible, and the precise amount of the unpaid balance at the date of death is available.
The judgment is reversed and remanded. The trial court is directed to order that there is no ademption and that appellant take the amount of $17,065.88 by reason of subparagraph 4(L).
Brown (G.A.), P.J., and Hopper, J., concurred.