472 So.2d 1299 (1985)
In re the ESTATE OF Walter J. JONES, Deceased.
Karen Carey HALL, Appellant,
v.
Edwin C. JONES, As Successor Personal Representative of the Estate of Walter J. Jones, Deceased, Appellee.
No. 84-1204.
District Court of Appeal of Florida, Second District.
July 12, 1985.
*1300 Robert M. Winick of Phillips, McFarland, Gould & Wagstaff, P.A., Clearwater, for appellant.
Marian P. McCulloch and J. Baird Lefter of Jacobs, Robbins, Gaynor, Burton, Hampp, Burns, Bronstein & Shasteen, P.A., Tampa, for appellee.
PER CURIAM.
This is an appeal from an order of ademption.
The dispositive scheme of Mr. Jones, as evidenced by his will, consisted entirely of eleven specific bequests contained in separately numbered paragraphs and a single residuary bequest. His named heirs were a sister, two sisters-in-law, three nieces (one of which was appellant), four nephews and a grandniece. The bequest to appellant read as follows:
To my niece, KAREN CAREY HALL, whose address is 832 Brookwood, Ann Arbor, Michigan, 48104, I give the equitable interest and/or income from my former home located in Lake of the Woods, Virginia, provided she survives me.
Mr. Jones had sold his former home in Lake of the Woods, Virginia, on May 13, 1981. He received a note and deed of trust to secure payment in the amount of $42,000.00, payable in 120 equal monthly installments. He executed his will on February 18, 1982. On July 27, 1982, the deed of trust note was prepaid in full to Mr. Jones in the amount of $42,054.00. Mr. Jones died on December 18, 1982, without having changed his will. An amended inventory revealed that his estate included a money market certificate in the amount of $40,000.00 and $2,054.00 in the decedent's regular account.
At the trial, the appellant was prepared to introduce testimony that Mr. Jones knew that she needed money because of her debilitating health and that the relationship between them remained cordial until the time of his death. However, the trial court refused to entertain evidence concerning the intent of the testator. The court construed the bequest to appellant as a specific bequest and ruled that because the specific property bequeathed was no longer in existence, the bequest failed or adeemed.
There is a split of authority with respect to whether the testator's intent has any bearing on a question of ademption. According to the majority rule, the testator's intent is irrelevant. 6 W. Bowe & D. Parker, Page on the Law of Wills § 54.15 (new rev.ed. 1962). Where there is a specific bequest, the issue is decided solely on the basis of whether or not the described property is a part of the testator's estate at the time of his death. Id. § 54.09. This view has been criticized as causing unjust results because in many cases the purpose of a bequest is simply to confer an economic *1301 benefit regardless of whether or not the description is specific. Note, Ademption and the Testator's Intent, 74 Harv.L.Rev. 741 (1960-1961).
The Florida courts have embraced the minority theory which takes into consideration the testator's intent. Thus, in Eisenschenk v. Fowler, 82 So.2d 876, 878 (Fla. 1955), the supreme court said:
The prime concern in determining whether or not an ademption resulted in the instant case is the familiar rule governing construction of wills, namely that the court should determine what the testator intended by what he did.
The case of In re Estate of Watkins, 284 So.2d 679 (Fla. 1973), illustrates that in determining issues of ademption it is proper to consider matters bearing on the testator's intent which occur subsequent to the execution of the will. Thus, the court said:
We agree with Petitioner that when there is no act on the part of a testator manifesting a change of intent, there is no ademption of the property bequested if it is in existence or can be traced.
284 So.2d at 681. In Forbes v. Burket, 181 So.2d 682 (Fla. 2d DCA 1966), our court discussed the conflicting theories in a dispute over the validity of the specific devise of a house which the testatrix's guardian had sold before the testatrix died. The testatrix had had nothing to do with the sale and the proceeds thereof were not needed for her support. We held that the devisee stated a cause of action on the premise that the testatrix intended that he receive the proceeds of the sale.
The case of Estate of Austin, 113 Cal. App.3d 167, 169 Cal. Rptr. 648 (1980), is instructive on the relevance of intent. There, the testatrix bequeathed to appellant a promissory note together with the deed of trust which secured the note. The note was paid in full four months after the will was executed, and the proceeds were placed in a savings account. A portion of the account was then loaned to another party in return for a promissory note and mortgage. When the testatrix died without having changed her will, the issue was whether or not the bequest of the original note had adeemed. On appeal from a judgment of ademption, the court of appeal stated:
In discerning the intent of the testatrix, we look first at the will. It is remarkable for the number and diversity of the legacies and bequests. It demonstrates a mind that enjoyed giving to many beneficiaries. Although there is a residuary clause in the will, there is a manifest intention to particularize the disposition of assets.
There is nothing in the record to suggest that the testatrix did anything to initiate the payoff of the Grenz note. It was paid incident to the sale of the property which was the security of the note.
There is nothing to show that the testatrix had a change of mind as to the appellant being a proper beneficiary of her estate. The oil portrait of the testatrix' mother remained a bequest to appellant.
She did nothing with reference to the proceeds except deposit them in a manner which was easily traceable and invested them in an almost identical type of asset  a promissory note secured by a deed of trust.
In determining whether the change is in form only, California courts have lately tended to avoid strict rules of ademption; rather they look to the inferred or probable intent of the testator under the particular circumstances... .
In absence of proof of an intent that the gift fail, there should be no ademtion... .
We find that there is no indication of an intent by the testatrix to adeem, and that the judgment must be reversed.
113 Cal. App.3d at 173-174, 169 Cal. Rptr. at 651-652 (citations omitted).
As part of the new probate code, our legislature determined that under certain circumstances ademption shall not occur. § 732.606, Fla. Stat. (1981). When the statute applies, the testator's intent is irrelevant, Owen v. Wilson, 399 So.2d 498 (Fla. 5th DCA 1981); however, there was no *1302 indication that the legislature intended that this statute would supplant Florida case law in those instances not covered by it. Since the statute is not applicable to the circumstances of the instant case, we believe that the court erred in refusing to entertain evidence pertaining to intent.
The trial judge refused to permit testimony concerning the intent of the testator because he found that there was no ambiguity in the will which would require clarification by parol evidence. However, we find the issue to be not whether the will was ambiguous but whether Mr. Jones intended that the prepayment of his promissory note would have the effect of disinheriting his niece. See In re Estate of Watkins. The fact that he lived for five more months without changing his will may indicate that she was no longer the object of his bounty. That he segregated the proceeds of the prepayment in a form that was easily traceable may suggest a contrary intent. In any event, in order to properly determine whether ademption occurred, the court should entertain all relevant evidence pertaining to the decedent's intent.
Reversed and remanded.
GRIMES, A.C.J., and LEHAN, concur.
CAMPBELL, J., dissents with opinion.
CAMPBELL, Judge dissenting.
I respectfully dissent.
The court below construed the bequest as a specific bequest, and because the specific property bequeathed was no longer in existence, the bequest failed or adeemed. Estate of Murphy, 340 So.2d 107 (Fla. 1976); In Re Parker's Estate, 110 So.2d 498 (Fla. 1st DCA 1959); § 732.605(1), Fla. Stat. (1982); Redfearn, Wills and Administration in Florida § 12.09 (5th ed. 1977). The court construed the will clause as being unambiguous and refused to hear parol evidence.
An axiom of will construction, as stated by the court in In Re Parker's Estate, is that:
It is uniformly held in this jurisdiction that in construing last wills and testaments the polar star by which the court is guided is the intent of the testator as ascertained by a consideration of the entire instrument, and not some isolated segment thereof. (Footnote omitted.)
110 So.2d at 501.
Appellant argues that the bequest to her was neither a specific bequest nor a general request, but rather a demonstrative bequest. A demonstrative bequest is defined as a bequest of a certain sum of money, stock or other property payable out of a particular fund, property or security. It may not be a gift of the corpus of the fund or property charged with the gift. It also may not show a purpose of relieving the general estate from liability for the bequest in the event that the particular fund or property fails.
Two elements are essential to a demonstrative bequest. It is an unconditional gift in the nature of a general bequest and it must indicate the fund or property out of which it is to be satisfied. In other words, the testator must have intended an unconditional gift regardless of the existence or nonexistence, at his death, of the particular fund or property from which the will directed the bequest to be satisfied. Park Lake Presbyterian Church v. Henry's Estate, 106 So.2d 215 (Fla. 2d DCA 1958); 18 Fla. Jur.2d Decedent's Property § 428 at 284 (1980); 80 Am.Jur.2d Wills § 1526 at 588-589 (1975); 96 C.J.S. Wills § 1125(f) at 882-884; Redfearn, Wills and Administration in Florida § 12.07 at 170 (5th ed. 1977).
In this case, on May 13, 1981, the decedent sold his former home and received a note and deed of trust to secure payment in the amount of $42,000.00, payable in 120 equal monthly installments of $432.00 each.
On February 18, 1982, the decedent executed his will which contained the disputed bequest to appellant.
On July 27, 1982, the deed of trust note was paid in full to the decedent.
*1303 On December 18, 1982, the decedent died and his will was admitted to probate on December 29, 1982. The amended inventory dated September 28, 1983, revealed that the decedent's estate included a money market certificate in the amount of $40,000.00, and $2,054.00 in decedent's regular account.
I agree with the court below that the proper construction of the disputed bequest clearly dictates that it was intended as a specific bequest. As such, when the note and deed of trust were satisfied, the particular property bequeathed was, thus, no longer in existence and, therefore, the bequest failed. To treat the bequest as a demonstrative bequest would require isolating that bequest from all the others and treating it, as opposed to the others, in the nature of a general bequest. If that were the proper construction, then whatever happened to the deed of trust, whether it be paid in full early or by the regular monthly payments or whether its value was dissipated by some other cause, the remainder of decedent's estate, which was all specifically bequeathed or devised, would have been subject to payment of appellant's bequest. Had the decedent lived the ten years required for the note to be paid out by the regular monthly payments, there would have been no equity, interest or income remaining due in regard to the note and deed of trust. I do not believe any different result occurs because the note was paid in full at an early date.
I would affirm.