996 So.2d 877 (2008)
Miles BRUNDAGE, Nancy J. Hughes, Diane Brundage Settle and Lewis F. Concklin, Appellants,
v.
BANK OF AMERICA, Trustee u/a Dorothy S. Gutsgell Amended and Restate Revocable Trust Agreement dated March 26, 1992, Appellee.
No. 4D07-1932.
District Court of Appeal of Florida, Fourth District.
October 29, 2008.
*878 Philip M. Burlington and Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, and Charles M. Eiss of Law Office of Charles Eiss, P.L., Weston, for appellants.
John H. Pelzer and Rubin F. Hazel of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellee.
WARNER, J.
This is an appeal from a final judgment in which the trial court involuntarily dismissed appellants' claims for declaratory *879 judgment and breach of fiduciary duty in the distribution of assets from a trust of the settler/beneficiary. The appellants received a specific gift of stock from the trust but claimed that they should have been entitled to a greater amount of stock because of a stock split. As the stock was not held by the trust at the time of settlor's death, the court declared that the appellants were not entitled to any greater distribution from the trust. It also found that the trustee had no duty to the appellants during the settlor's lifetime and breached no fiduciary duty. We hold that the court properly entered a declaratory judgment against the appellants, but we reverse the count for breach of fiduciary duty because the trial court erred in refusing to admit evidence of the settlor's incapacity to consent to the disputed transfers from the trust.
Dorothy Gutsgell and her husband, who had no children of their own, executed a series of estate planning documents, using the law firm of Ruden McClosky for their planning. In 1992 Dorothy, as settler, executed an amended revocable trust of which she was both the lifetime beneficiary and trustee. The trust provided that should she predecease her husband, the residue would go to her husband, but if he predeceased her, the residue of the trust would go to her niece, appellee Lucy Brundage, whom she treated like a daughter. In addition, the trust provided that upon Dorothy's death, a specific distribution of 6,000 shares of American Home Products ("AHP") stock would be made to each of her four other nephews and nieces, the appellants in this case (hereinafter referred to as the Brundages), and 3,000 shares to a godson. Lucy is the sister of the Brundages.
After the stock of AHP split in 1995, Dorothy executed an amendment to her trust increasing to 12,000 shares the amount of stock to be distributed to the Brundages, and 6,000 to the godson. The stock split again in 1998, while Dorothy was still trustee, but this time she did not execute an amendment increasing the stock to be distributed to the Brundages.
After Dorothy's husband died in April 2001, she met with Ruden McClosky attorney Joseph Ducanis to revisit her estate plan with the goal of minimizing estate taxes on her sizeable financial holdings, because the marginal tax rate on her estate approximated 55%. Ducanis developed a plan to save taxes by transferring the assets of the trust to a family partnership. He created various partnerships and a charitable foundation. The Gutsgell-Brundage Corporation became the general partner of the family partnerships, owning 0.5% of the partnerships, and the revocable trust became the limited partner, owning 99.5% of the partnerships. Different amounts of stock in AHP were transferred from the trust to each of the partnerships.
Dorothy instructed Ducanis to retain in the trust the 54,000 shares of AHP to be distributed to her nieces, nephews, and godson upon her death. Ducanis did not know that the stock had split in 1998. Around that same time, Dorothy resigned as trustee of her trust. The trust provided that Lucy and Bank of America would become co-trustees upon Dorothy's inability or refusal to serve as trustee.
To accomplish the estate planning and transfers of stock to the partnerships, both Lucy and Beverly Rogers, a trust officer at Bank of America, signed three transfers of the AHP stock in the trust, save for the 54,000 to be distributed to the Brundages, to the partnership. Dorothy signed a joinder and consent to these transfers. The Brundages claim that at the time of the transfer Lucy knew of the 1998 stock split of AHP, although the record is not clear on this point. Nevertheless, for the purposes *880 of this appeal we will assume that she did.
Dorothy died in 2003. After her death, the co-trustees of the trust distributed the 54,000 AHP shares among the Brundages in accordance with the terms of the trust. As residuary beneficiary of the trust, Lucy became the owner of the partnerships to which the rest of the AHP shares had been transferred in the estate planning of 2001.
The Brundages demanded that Lucy and Bank of America distribute the additional 54,000 shares of AHP generated by the 1998 stock split. The co-trustees refused, because the trust had no additional AHP shares. All other shares had been assigned to the partnerships in 2001.
The Brundages filed suit for declaratory judgment against Bank of America and Lucy, claiming that as a result of the 1998 stock split, they were entitled to double the amount of stock mentioned in the trust. They later amended their complaint to allege a breach of fiduciary duty against the co-trustees. They alleged that because Lucy was a residuary beneficiary of the trust, and thus the ultimate beneficiary of the stock transfer, her approval of the stock transfer constituted a violation of article IX.M.2. of the trust which provides that "any person ... eligible to receive any property" under the trust may not make any discretionary decisions, in her capacity as trustee, which will determine "the propriety or amount of payments of income or principal" to herself.
Significant discovery ensued, including the deposition of a doctor who saw Dorothy in late 2001 and concluded that she was not competent to manage her affairs. However, the case was set for trial without further requests to amend the complaint. During a pre-trial conference between the attorneys, the Brundages' attorney noted that the co-trustees had never answered the amended complaint. Within days prior to the trial, the co-trustees answered with a general denial and affirmatively alleged that Dorothy herself consented to the transfers. The Brundages immediately filed a reply in which they alleged that Dorothy was not competent to consent to the transactions.
At trial the co-trustees moved in limine to exclude evidence of Dorothy's mental competency, because the Brundages had not raised it in pleadings. The court granted the motion, concluding that the cotrustees' defense of consent constituted a "simple denial." The Brundages also moved to conform the pleadings to the evidence.[1] The court denied this motion, concluding that raising the mental incapacity of Dorothy only a few days prior to trial when the information regarding any incapacity was available to the Brundages at least a year prior to the trial was prejudicial to the co-trustees in the preparation of their case.
During the trial, Ducanis testified that Dorothy had instructed him to preserve the stock distributions to the Brundages in the trust and had signed the joinder and consents to the transfers of stock to the partnerships. At the close of the case, the Brundages again moved to conform the pleadings to the evidence so that they could raise a claim of mental incapacity, arguing that the evidence presented had opened the door to such a claim. Again concluding that the claim could not be raised at trial to the prejudice of the co-trustees, the court denied the motion.
Upon motion for involuntary dismissal by the co-trustees, the court declared that the Brundages were not entitled to the *881 additional shares of stock generated from the stock split in 1998, because the trust did not own any additional shares on the date of Dorothy's death. It concluded that the co-trustees did not owe a fiduciary duty to the Brundages, who were contingent beneficiaries under the revocable trust during Dorothy's lifetime, nor did they show any breach of any duty. The Brundages appeal the final judgment.
We review a judgment entered on a trial court's decision to grant a motion for involuntary dismissal at the close of the plaintiff's case de novo. Widdows v. State Farm Fla. Ins. Co., 920 So.2d 149, 150 (Fla. 5th DCA 2006). "An involuntary dismissal or directed verdict is properly entered only when the evidence considered in the light most favorable to the non-moving party fails to establish a prima facie case on the non-moving partys claim." McCabe v. Hanley, 886 So.2d 1053, 1055 (Fla. 4th DCA 2004) (quoting Hack v. Estate of Helling, 811 So.2d 822, 825 (Fla. 5th DCA 2002)).
In their declaratory judgment action, the Brundages sought a declaration regarding the effect of the 1998 stock split on their right to distribution of the trust. Florida follows the general rule that where a will bequeaths stock to a beneficiary and the stock splits, because the split is a mere change in form and not in substance, a beneficiary is entitled to the shares generated by stock splits that occur between the date of execution and demise. See In re Vail's Estate, 67 So.2d 665, 667 (Fla. 1953). Where the stock devise made in the will is no longer in the estate at the time of the testators death, the gift is considered adeemed. In re Estate of Walters, 700 So.2d 434, 436 (Fla. 4th DCA 1997). For securities, however, this issue is controlled by section 737.622, Florida Statutes (repealed and reenacted verbatim in the Florida Trust Code as section 736.1107, Florida Statutes (2007). See Ch. 2006-217, § 11, Laws of Fla.). That statute codifies the rule of ademption and provides that gifts of securities are limited to the securities owned by the trust at the time of death:
Change in securities; accessions; non-ademption
A gift of specific securities, rather than their equivalent value, shall entitle the beneficiary only to:
(1) As much of the gift securities of the same issuer held by the trust estate at the time of the occurrence of the event entitling the beneficiary to distribution.
§ 736.1107, Fla. Stat. As the trust did not hold any more than 54,000 shares of AHP stock on the date of Dorothy's death, the event entitling the beneficiaries to the distribution, the Brundages cannot claim a greater share. They argue that the court should have considered Dorothy's intent with respect to the distribution of the stock before ruling on the legal effect of the transfer. The statute, however, does not require or allow for an inquiry into the intent of the testator. It creates a clear rule of ademption where the trust does not hold the securities at the date of death.[2]
We find inapposite In re Estate of Jones, 472 So.2d 1299 (Fla. 2d DCA 1985), and In Re Estate of Budny, 815 So.2d 781 (Fla. 2d DCA 2002), which the Brundages cite for *882 the proposition that the court may consider intent to preclude the rule of ademption when the property bequeathed is disposed of prior to the decedent's death. Both of those cases did not involve the disposition of securities, and thus did not interpret or apply the statute which controls in this case. In fact, Jones, one of the Brundages' principal cases, noted "the testator's intent is irrelevant" if a statute controls. 472 So.2d at 1301.
In their second count, the Brundages claim that the co-trustees breached their fiduciary duty by engaging in self-dealing. In particular, they alleged that because they would have been entitled to additional shares of stock because of the stock split as a matter of law had the shares remained in the trust at Dorothy's death, the transfer of those shares of stock out of the trust to the partnership amounted to selfdealing on the part of Lucy who benefitted from the transfer of title to the stock. The trial court determined that during Dorothy's lifetime, the co-trustees owed no fiduciary duty to the Brundages, the contingent beneficiaries. Moreover, the court found that the Brundages had not proved any breach of fiduciary duty. We agree that the co-trustees did not owe the contingent beneficiaries a duty during Dorothy's lifetime, but the co-trustees did owe duties to Dorothy and the trust which the Brundages could sue to enforce after Dorothy's death.
As settlor of her own revocable trust of which she was the sole beneficiary until her death, Dorothy reserved to herself the sole power to change beneficiaries or revoke her trust at any time. "[T]he beneficiaries of [the] trust other than [the settler] ... do not come into possession of any of the trust property until the event of [the settlor's] death, and even this interest is contingent upon her not exercising her power to revoke. Since she is the sole beneficiary of the trust during her lifetime, she has the absolute right to call the trust to an end and distribute the trust property in any way she wishes." Fla. Nat'l Bank of Palm Beach County v. Genova, 460 So.2d 895, 897 (Fla.1984) (emphasis omitted). The interest of the Brundages did not vest until Dorothy's death. See In re Johnson's Estate, 397 So.2d 970 (Fla. 4th DCA 1981). It follows that during the settlor/beneficiary's lifetime, a trustee owes a fiduciary duty to the settlor/beneficiary and not the remainder beneficiaries, who not only have no vested interest but whose contingent interest may be divested by the settlor prior to her death.
We have found no case which enforces on a trustee a duty owed to a contingent beneficiary of a revocable trust. However, once the interest of the contingent beneficiary vests upon the death of the settlor, the beneficiary may sue for breach of a duty that the trustee owed to the settlor/beneficiary which was breached during the lifetime of the settlor and subsequently affects the interest of the vested beneficiary. Smith v. Bank of Clearwater, 479 So.2d 755 (Fla. 2d DCA 1985), illustrates this principle. In Smith the court held that a contingent remainderman of a trust, whose interest vested with the death of the lifetime beneficiary, had standing to sue for mismanagement of trust assets during the lifetime of the income beneficiary, because such mismanagement diminished the value of the trust assets to which the remainderman was entitled. The trustee owed the lifetime beneficiary the duty to properly manage the assets of the trust, and a breach of that duty could be enforced by the remainderman. Cf. Siegel v. Novak, 920 So.2d 89 (Fla. 4th DCA 2006) *883 (applying New York law and reaching a similar result).
The Brundages accuse the co-trustees of self-dealing in the assignment of the AHP shares to the family partnership. Specifically, both in the complaint and at trial, they attempted to prove a violation of article IX.M.2. of the trust, which prohibits a trustee from participating in the "exercise of any discretion to determine the propriety or amount of payments of income or principal" to himself or herself. This obligation constitutes a duty owed to the settlor/beneficiary, expressly contained within the trust instrument itself. Without Dorothy's consent, the establishment of the partnerships and the transfer of all of the AHP stock to those partnerships would constitute investment and management decisions which would require the exercise of discretion on the part of the co-trustees.
The co-trustees argue that they, and particularly Lucy, did not engage in any discretionary act in assigning the AHP stock to the partnership, because the assignment was all part of an estate plan that Dorothy controlled and implemented through her attorney's advice. Dorothy's joinder in the transaction indicates her consent to the transfer. The co-trustees merely exercised a ministerial function in signing documents prepared and requested by the settlor. The co-trustees' argument does not deny that Lucy benefitted from the transaction. If Dorothy had not consented to the transactions, then the Brundages would have presented sufficient evidence that the trustees engaged in investment and management decisions which may have violated the terms of the trust. The evidence was at least sufficient to overcome the motion for involuntary dismissal of the breach of fiduciary duty count.
Responding to the co-trustees' affirmative defense of consent, the Brundages claimed in their reply that Dorothy's consent was void because she was incompetent at the time. While a settlor can consent to any actions regarding the revocable trust, including termination, that ability ceases if the settlor becomes incapacitated. See Genova v. Fla. Nat'l Bank, 433 So.2d 1211 (Fla. 4th DCA 1983), approved by Fla. Nat'l Bank of Palm Beach County v. Genova, 460 So.2d 895 (Fla. 1984). Thus, Dorothy's capacity to consent to the transfers, on which consent the co-trustees relied in seeking involuntary dismissal and in this appeal, was crucial. The trial court refused to permit evidence of her incompetency at trial. This was error because the claim was contained within the timely filed reply.
The co-trustees did not file an answer to the second amended complaint until days prior to trial in which they raised as an affirmative defense that Dorothy consented to the transactions. Their failure to file an answer appears to be an oversight, but the fact that the answer was late should not be charged against the Brundages. Indeed, they could have, but did not, move for a default on the entire matter because of the co-trustees' failure to answer the amended complaint. Instead, they filed a reply in avoidance of the consent, claiming that Dorothy was incapacitated at the time of its execution.
The trial court erred in concluding that the co-trustees' reliance on Dorothy's consent in their answer was nothing more than a denial of the allegations of the complaint. The co-trustees quite clearly relied on Dorothy's consent in proving their case. In reply, the Brundages should have been entitled to attack that consent on the ground of Dorothy's incapacity. It was an abuse of discretion to refuse to permit testimony regarding the capacity of the settlor when the issue had been properly raised in the reply.
When the issue of incapacity was introduced in the pleadings on the eve of trial, *884 the co-trustees were not prepared with witnesses to meet that issue. Nevertheless, they could not affirmatively allege reliance on Dorothy's consent without permitting the Brundages to claim that the consent was void. A better solution to the prejudice to the co-trustees caused by their failure to answer in a timely manner would have been to continue the case.
Because the trial court abused its discretion in refusing to admit evidence of Dorothy's mental capacity to execute the consent, we reverse and remand for a new trial on count two of the complaint.
Affirmed in part, reversed in part, and remanded for proceedings in accordance with this opinion.
STONE and DAMOORGIAN, JJ., concur.
NOTES
[1] This is actually an improper use of a motion to conform as the trial had not yet started and no evidence had been presented at the time of the motion. See Fla R. Civ. P. 1.190(b). Thus, the issue had not been tried by implied consent of the parties.
[2] Even if we considered her intent, we would have to conclude that the Brundages had not presented evidence to show that Dorothy would have intended for them to receive the additional shares of stock because they would be stacking inference upon inference. They infer that Dorothy did not know about the 1998 stock split and that had she known about it she would have executed an amendment to her trust as she did in 1995 to provide them with the additional shares of stock. However, the initial inference is not the only reasonable inference which can be drawn. Dorothy was trustee of her own trust in 1998 and thus was in charge of all of the assets. Therefore, it is equally reasonable to assume that she did know of the split, because she would have received all notices and statements regarding her stock account. One can rely on an inference upon an inference as proof of a fact only if the first inference is established to the exclusion of all other reasonable inferences. Nielsen v. City of Sarasota, 117 So.2d 731, 733 (Fla.1960).