433 So.2d 1211 (1983)
Ann Cleary GENOVA, Appellant,
v.
The FLORIDA NATIONAL BANK OF PALM BEACH COUNTY, a National Banking Institution, Appellee.
No. 81-941.
District Court of Appeal of Florida, Fourth District.
February 2, 1983.
As Modified on Denial of Motions for Rehearing and to Intervene July 27, 1983.
*1212 Elaine F. Miller of Miller & Miller, P.A., West Palm Beach, for appellant.
Victoria F. Peet of Gibson & Gibson, West Palm Beach, for appellee.
Richard A. Kupfer of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for intervenors.
GLICKSTEIN, Judge.
This is an appeal by the settlor of a revocable trust from a final judgment which dismissed her petition for writ of mandamus and granted the appellee/trustee's petition for instructions. We reverse and remand with direction to grant the writ of mandamus. The final judgment reads in part:
2. This matter is centered around an attempted revocation of a revocable trust which was created by a trust agreement dated January 31, 1979, between Ann Cleary Genova as Settlor and Co-trustee and the Florida National Bank of Palm Beach County as Trustee. The trust agreement was modified by written instruments dated May 15, 1979, August 27, 1979 and May 12, 1980. Based upon the attempted revocation of the trust, a Petition for Writ of Mandamus was filed by Ann Cleary Genova requesting the entry of an order compelling the Florida National Bank of Palm Beach County to surrender the assets of the trust to Ann Cleary Genova. A Petition for Instructions was then filed by the Florida National Bank of Palm Beach County in the discharge of its duties as a fiduciary under the trust. The Petition stated that the Trustee doubted the validity of the attempted revocation due to the possible exertion of undue influence by Mark T. Genova.
3. Mark T. Genova and Ann Cleary Genova were married on September 5, 1978, at Las Vegas, Nevada. The marriage was dissolved by the Order of the Honorable Thomas E. Sholts on October 10, 1979. Bifurcated jurisdiction was retained to determine certain property rights between the parties. On April 28, 1980, Judge Sholts entered his final judgment and in the terms thereof found that an agreement titled "Resolution and Affidavit" executed by Ann Cleary Genova, and which Mark T. Genova sought to enforce, was void as having been procured by the undue influence of Mark T. Genova.
4. On July 3, 1980, Mark T. Genova and Ann Cleary Genova were remarried at Fort Lauderdale, Florida. At the time of their marriage, Mrs. Genova was approximately forty-five (45) years older than Mr. Genova.
5. By letter dated July 8, 1980, Ann Cleary Genova advised the Florida National Bank of Palm Beach County that she wished to transfer the trust assets fo [sic] the First National Bank of Riviera Beach. This letter was signed in the presence of Mark T. Genova at the Alibi Bar in West Palm Beach, Florida which was owned by Mr. Genova. On July 9, 1980, Ann Cleary Genova signed a power of attorney directing the transfer of the trust assets to the account of Ann Cleary Genova in the Pan American Bank of Palm Beach County, Florida. On July 10, 1980, this power of attorney was presented by Billy R. Jackson to Brenda Earl, a Trust Officer of the Florida National Bank of Palm Beach County. On July 11, 1980, Ann Cleary Genova and Billy R. Jackson advised Robert J. Pflieger, a Trust Officer of the Florida National Bank of Palm Beach County, that Ann *1213 Cleary Genova wished to revoke the above trust.
6. In the month following the attempted revocation of the trust, Ann Cleary Genova transferred her only asset not in trust, a commercial rental property, to Mark T. Genova reserving the right to rents and profits during her lifetime. Shortly thereafter, Ann Cleary Genova executed a new will in which Mark T. Genova received her residuary estate. During this same period of time, Ann Cleary Genova signed a real estate contract to purchase a residence for One Hundred Fifty Thousand Dollars ($150,000.00).
7. The Court finds that the attempts made by Ann Cleary Genova during July of 1980 to revoke the aforesaid trust were effected through the use of undue influence, practiced intentionally by Mark T. Genova upon Ann Cleary Genova and that the revocation attempts are therefore determined to be invalid and of no legal significance.
Although the final judgment and the parties' briefs center upon the question whether appellant was unduly influenced to revoke the trust by her husband  45 years her junior  we conclude that not to be the determinative question. Instead, we believe the latter to be whether the settlor, who is the sole beneficiary of the trust during her lifetime (subject to her right to direct otherwise) could be deprived, prior to her death, of her right to revoke the trust in the absence of judicial determination or medical certification of her physical or mental incapacity. We answer that question in the negative.
The trust consisted of over $475,000 in treasury bills, certificates of deposit and a savings account. Paragraph 3 of the instrument creating the trust provided with respect to management of the trust:
3. During the lifetime of the SETTLOR, and unless this Trust Agreement shall have been otherwise revoked or amended, the TRUSTEES shall retain and administer the property comprising the TRUST ESTATE in the manner following:
(a) Unless the SETTLOR shall be or become incapacitated as defined in Subparagraph (b) hereinafter, the TRUSTEES shall retain and safeguard the property comprising the TRUST ESTATE, shall collect the income therefrom and shall pay to the SETTLOR or apply to her benefit, the net income derived therefrom in quarterly or other convenient installments, or upon direction of the SETTLOR shall pay and distribute such net income to such person, or persons, and in such proportions as the SETTLOR may from time to time direct. During such times, the SETTLOR shall be solely and entirely responsible for the management and investment of the properties comprising the TRUST ESTATE, and any changes in investment or purchases or sales of the Trust assets shall be made by the TRUSTEES only at the written direction of the SETTLOR; and the TRUSTEES' sole duties hereunder shall consist of the holding and administration of the TRUST ESTATE, maintaining accurate and appropriate records, the collection and distribution of income and the performance of such other ministerial duties in connection therewith as shall be deemed proper in their sole discretion.
(b) Upon the occurrence of any one or more of the following events, TRUSTEES shall assume full responsibility of the management and investment of the TRUST ESTATE:
(1) The receipt by the TRUSTEES from the SETTLOR of a signed statement requesting and directing that the TRUSTEES assume full management and investment of the TRUST ESTATE, and the acceptance of such direction by the TRUSTEES.
(2) The adjudication by a court of competent jurisdiction of the physical or mental incompetency of the SETTLOR.
(3) The receipt by the TRUSTEES of a certificate in writing executed by the *1214 attending physician of the SETTLOR certifying that the SETTLOR has become incapable of the management of her business and personal affairs by reason of physical or mental disability.
During such times as the SETTLOR shall have become incapacitated or disabled as defined in the foregoing paragraph, the corporate TRUSTEE shall exercise the management and investment of the TRUST ESTATE: provided, however, that the corporate TRUSTEE shall not change the assets then comprising the TRUST ESTATE during the first sixty (60) days of the SETTLOR's incapacity or disability, but may nevertheless use principal of the Estate, if necessary, and sell principal assets as required in order to provide adequately and properly for the support, maintenance, welfare and comfort of the SETTLOR. During such times of management and investment, the corporate TRUSTEE shall, in its sole discretion, use so much of the net income and any portion or all of the principal of the Estate for the support, comfort and welfare of the SETTLOR, and any income not so utilized shall be accumulated and added to principal. The SETTLOR acknowledges that the foregoing provision is made for her sole benefit and welfare, and she declares therefore that the corporate TRUSTEE shall not be under any liability or responsibility by reason of the exercise of their powers during such time, or times, as the SETTLOR is incapacitated or disabled and is unable to manage her financial affairs.
(4) At such time as the SETTLOR has recovered from any illness or incapacity, she shall again assume the management and investment of the TRUST ESTATE.
The foregoing language is plain that appellant intended to relinquish control of the trust to her co-trustee only under two circumstances; namely, (1) when she said so or (2) when she was medically or judicially determined to be incapacitated. Such independence is reflective of Modell's cartoon in The New Yorker many years ago wherein the attorney is shown reading the will to the heirs. Underneath, the caption recites:
His will reads as follows: `Being of sound mind and disposition, I blew it all!'
In the absence of appellant's incapacity, the trial court's apparent concern that in the event of revocation appellant would give her remaining assets to her husband was not legal justification to deprive her of the express right of revocation she retained unto herself when she created the trust. There is considered authority for the position we adopt. See Restatement (Second) of Trusts § 339, comment a, page 171 (1957):
If the settlor is not under an incapacity at the time when he creates the trust, but he subsequently becomes under an incapacity, he cannot thereafter terminate the trust. Thus, if the settlor becomes insane or is judicially declared a spendthrift, he cannot terminate the trust. The mere fact, however, that he is a person who is unable wisely to manage or dispose of his property does not preclude him from terminating the trust and compelling the trustee to re-transfer the trust property to him if he is the sole beneficiary of the trust; and it is immaterial that his purpose in creating the trust was to put the management of his property out of his own hands, because of his fear that he would mismanage it, and to protect himself against his own incompetence, wasteful habits or intemperance. He can terminate the trust, if he is not under an incapacity, because he is both the settlor and the sole beneficiary of the trust.[1]
*1215 We choose not to apply to the facts of this case the decision in Hoffman v. Kohns, 385 So.2d 1064 (Fla. 2d DCA 1980), on which appellee relies. In that case the 84 year old settlor/testator died shortly after executing a will in favor of his 55-year-old bride, one day after marrying her and one month after apparently meeting and employing her as a housekeeper. He was suffering from senility and cerebral arteriosclerosis; and his regular physician testified that he was incompetent to make any major decisions.[2] Ten days after his marriage, the settlor signed a one paragraph revocation of the trust he had created six years earlier.[3] The revocation, coupled with the new will, left the new wife with everything. The court affirmed the determination that the will was procured by the wife's undue influence. To avoid what it perceived to be an intolerable result, the court considered it also necessary to set aside the revocation of the trust. Had it not done so, the procuring bride would have received all of the assets of the estate through intestacy. Only by preserving the assets in the trust could the court diffuse the anomaly viewed by it as rewarding the overreaching wife.
Our focus is upon the present appellant/settlor in her lifetime; and not upon the prospective beneficiaries who may benefit in the event of her death. There being no substantial, competent evidence to establish her incapacity at the time of her revocation, she was free to terminate what she alone had undertaken, the subject matter of which belonged exclusively to her.
In conclusion, we believe this court would be overstepping its bounds by becoming, in essence, the settlor's guardian  notwithstanding the absence of her incapacity  in its application of the principle of undue influence to the revocation of a trust of which she alone is the sole settlor and beneficiary. The undue influence is allegedly being asserted by her lawful husband towards whom no petition for dissolution has been directed. Let us assume there was never a trust and the husband unduly influenced his present wife to give him $100,000. Could the court in that instance undertake to void the gift if one of the wife's relatives sued to do so, notwithstanding the absence of any dissolution proceedings or action by the wife to rescind the gift? When does the court stop being a judicial forum and turn into an Orwellian Big Brother? Our judgment tells us that there is a limit to the issuance of judicial fiat based on the belief that the court is saving the wife from what she may do in the future with her own money vis-a-vis her lawful husband.
WALDEN, J., concurs.
HERSEY, J., dissents with opinion.
HERSEY, Judge, dissenting.
While the logic of the majority view is compelling, I remain unconvinced that the result reached is consonant with justice and therefore I respectfully dissent. My own perspective of the legal and equitable principles involved has several points of departure from that of the majority, but it will be sufficient to deal with only one.
It seems to me that we beg the question when we indicate that the issue is not "whether appellant was unduly influenced to revoke the trust" but rather, could the *1216 settlor be deprived "of her right to revoke the trust in the absence of judicial determination or medical certification of her... incapacity."
I respectfully suggest that this latter is not the issue  but to dispose of it we may assume that the settlor may not be deprived of her right to revoke the trust under those circumstances. Given that assumption there remains the very real issue, swept under the carpet by the majority opinion, of whether the settlor exercised her right to revoke the trust. Whether she did or not depends upon whether her act of preparing and delivering to the trustee a written revocation was an intentional act of her own volition or whether that act was the product of an improper influence destroying the free agency of the settlor causing her to perform the act not of her own volition. Herald v. Hardin, 95 Fla. 889, 116 So. 863 (1928). "To constitute `undue influence' the mind must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influences of persons in close confidential relationships with the person influenced, that he is not left to act intelligently, understandingly, and voluntarily, but is subject to the will or purpose of another." 20 Fla.Jur.2d, Duress and Undue Influence, p. 324 (citing Florida cases).
A contract, (see 9 Fla.Jur.2d, Cancellation etc. § 15), a will, (see In Re Peters' Estate, 155 Fla. 453, 20 So.2d 487 (Fla. 1945)), a deed, (see, e.g., Duncan Properties, Inc. v. Key Largo Ocean View, Inc., 360 So.2d 471 (Fla. 3d DCA 1978)), or a gift, (see Majorana v. Constantine, 318 So.2d 185 (Fla. 1975)) is without legal efficacy if procured by the instrumentality of undue influence (whether under the circumstances the end result is void or voidable is of no consequence to a resolution of the present case and may therefore be safely ignored). The revocation of a trust enjoys no insulation from either the consequences or the rationale of that principle.
The issue, restated, is whether the written revocation was the product of undue influence. If it was, then its enforcement may successfully be resisted.
The trial court found that the revocation was procured by the use and application of undue influence. The evidence supporting that conclusion, while mostly circumstantial, was both competent and substantial. For that reason I would affirm the final judgment.

ON MOTIONS FOR REHEARING AND TO INTERVENE
GLICKSTEIN, Judge.
Having failed to notify the panel deciding this case until after the issuance of its opinion[1] that there was pending in this court another appeal by Mrs. Genova from an amended final judgment subsequent to that entered by the trial judge in this case, appellee now files a motion for rehearing, asserting that it inadvertently failed to do so.[2]
Mrs. Genova's relatives, having failed to seek intervention in the appeal until after the issuance of our opinion, now seek leave to intervene. They assert that they were parties to the proceedings in the trial court and are not appellees of record heretofore, because they were not named in the notice of appeal. Of course, the record shows that they were served with a copy of the notice as well as with copies of appellant's briefs and chose to do nothing in response. What could have been timely and appropriate now appears almost officious. We deny their motion.
As for appellee's motion for rehearing, we have reviewed the record in both appeals which reflect the following:
*1217 1. Mrs. Genova initially sought to revoke the subject trust on July 11, 1980. In our opinion, footnote 3 recited:
3. Appellant sought to revoke the trust in this case by means of a four page, handwritten letter which set out her reasons for doing so.
It should have said:
3. Appellant sought to revoke the trust in this case by means of a letter signed by her attorney and herself. The attorney signed in that capacity as well as the agent of the settlor pursuant to a written power of attorney.
We amend the opinion to reflect that change.
2. Mrs. Genova, within ten days after entry of final judgment by the trial court in the proceedings which led to the present appeal, sent appellee a four page handwritten letter, dated February 23, 1981, revoking the trust and reciting her reasons for doing so. The letter was witnessed, apparently by a clergyman and by a friend.
3. Unlike the present appeal, the other appeal involves the mental capacity of Mrs. Genova. The appellee bank never pled that issue in the proceedings which resulted from the revocation attempted in July, 1980. However, it did plead it in connection with the attempted revocation in February, 1981. Moreover, as a result of testimony taken in May, 1982, the trial court expressly found in its amended final judgment of July 8, 1982 that Mrs. Genova lacked the mental capacity to revoke the trust notwithstanding medical, clergical and other testimony to the contrary.
4. It is apparent from the record in the other appeal that the appellee bank sought to prevent the July, 1980, attempted revocation solely because of its concern for the undue influence of Mr. Genova.
5. It is further apparent that if Mrs. Genova presently is mentally incapacitated and if we were to ignore such fact, our present opinion  without more  could result in irreparable harm.
6. It is finally apparent that if we allow the July 1980 revocation to become effective it may well moot the other appeal.[3]
Having reviewed the records in the two appeals, we now turn our attention again to the appellee's motion for rehearing. Aside from calling our attention to the other appeal, appellee repeats its earlier arguments that undue influence should be sufficient to thwart the revocation. We again maintain it is insufficient. However, because we recognize that Mrs. Genova's welfare is our only concern  not that of her husband or prospective beneficiaries  we are going to direct that the trial court consider the trust revoked, but subject to the condition imposed herewith that the trial court further order the appellee, its successor, First American Bank, or any other party which may be in custody of the trust assets pursuant to any order of the trial court entered while this appeal was pending, that it not make any distribution to Mrs. Genova, other than essential for her support, or to anyone else pursuant to her instruction or that of her agents or attorneys, for a period of sixty days. Within that period, if no petition to determine Mrs. Genova's competency is filed, the original opinion of this court, as modified with respect to footnote 3, shall be implemented. If such petition is filed, distribution, other than for support, shall not be made until ultimate disposition of that petition. It is the wish of this court that the trial court appoint to the examining committee required by section 744.331, Florida Statutes (1981), persons who have not testified for either party in either of these proceedings to assist in such determination, if it is medically feasible to do so.
In short, this court is determined that neither it nor the trial court should meddle in Mrs. Genova's affairs if she is mentally *1218 capable of conducting them and is equally determined to protect her assets if she is mentally incapacitated. Her rights and dignity as an individual demand of the trial judge his closest scrutiny of that capacity and should override any concern for the alleged avarice of her youthful husband or the interests of prospective beneficiaries in Mrs. Genova's assets.
WALDEN, J., concurs.
HERSEY, J., dissents without opinion.
NOTES
[1] A more spirited interpretation of this principle appears in Waldron v. Commerce Union Bank, 577 S.W.2d 669, 674 (Tenn. App. 1978), wherein the court said:

By the great weight of authority it is held that a settlor who is the sole beneficiary of a trust and is not under a legal incapacity can revoke the trust even though the purposes for which he created it may have been to preclude him wasting his own assets. The suggestion that if in a moment of wisdom he has created a trust for his own protection, he should not be allowed in a moment of folly to deprive himself of that protection is imaginary. He has no protection against his own folly since his interest under the trust may be assigned by him or reached by his creditors. He cannot create a spendthrift trust for his own benefit. McArthur v. Faw, 183 Tenn. 504, 518, 193 S.W.2d 763 (1945); Rose v. Third National Bank, 27 Tenn. App. 533, 183 S.W.2d 1 (1944). "At any rate, regardless of his wisdom or folly in creating the trust, since nobody but he has at any time any beneficial interest in the property, he should be permitted to do as he likes with it, if he is not under a legal incapacity." Scott, The Law of Trusts, § 339, p. 2699 (3d).
The rule, as will be noted, is subject to the condition that the settlor not be under a legal incapacity at the time of termination.
[2] The trial court found the settlor in poor mental health, but not incompetent. It also found the will to be the result of "resulting persuasion, coercion and excessive influence dominating his willpower." The appellate court agreed.
[3] Appellant sought to revoke the trust in this case by means of a four page, handwritten letter which set out her reasons for doing so.
[1] Genova v. Florida National Bank of Palm Beach County, 433 So.2d 1211 (Fla. 4th DCA Feb. 2, 1983).
[2] It asserts that it filed in the other pending appeal a "Notice of Similar Pending Appeal" which referred to the present appeal but neglected to do so in this one. Admittedly, it filed no motion of any nature in either appeal. See Procedure 7.1, Manual of Internal Operating Procedures of the Fourth District Court of Appeal.
[3] In re: The Trust of Ann Cleary Genova, Case No. 82-1538. It serves no purpose to hysterically conclude that if the trial court found Mrs. Genova mentally incapacitated in February, 1981, this court must disregard all that went before and manipulate the proceedings into a similar finding as of July, 1980. We would prefer to deal with the newly discovered issue of mental capacity in another fashion.