460 So.2d 895 (1984)
FLORIDA NATIONAL BANK OF PALM BEACH COUNTY, Etc., Petitioner,
v.
Ann Cleary GENOVA, Respondent.
No. 64160.
Supreme Court of Florida
November 1, 1984.
Rehearing Denied January 15, 1985.
Victoria P. Brenner of Gibson & Adams, West Palm Beach, for petitioner.
Elaine F. Miller of Miller & Miller, West Palm Beach, for respondent.
ADKINS, Justice.
This is a petition to review a decision of the Fourth District Court of Appeal reported as Genova v. Florida National Bank, 433 So.2d 1211 (Fla. 4th DCA 1983). We find conflict with Hoffman v. Kohns, 385 So.2d 1064 (Fla. 2d DCA 1980). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The issue presented here is whether the principle of undue influence is applicable when revoking a revocable trust. We hold that it is not; therefore, we approve the decision of the Fourth District Court of Appeal.
The facts of this case reveal that Mrs. Genova created the Ann Cleary Genova Revocable Trust on January 30, 1979, naming Florida National Bank of Palm Beach County, petitioner, and herself as co-trustees. Under the terms of the trust, she reserved the income for her life and provided for numerous pecuniary gifts to take effect upon her death.
Mrs. Genova, then Ann Cleary, first married Mark Genova on September 5, 1978. At the time she was seventy-six and Mark was thirty-two years old. Ann and Mark Genova were divorced on October 10, 1979, and a final judgment regarding property rights was entered by Judge Sholts on April 28, 1980. The trial judge in the dissolution proceeding invalidated one transfer of certain of Mrs. Genova's assets to her husband based upon a finding of undue *896 influence practiced upon Mrs. Genova by her husband.
On July 3, 1980, Ann and Mark Genova were remarried. On July 8, 1980, five days after their remarriage, Mrs. Genova wrote a letter to a trust officer of Florida National, requesting that her trust be revoked. She wrote this letter in the presence of Mark Genova at his restaurant, the Alibi Bar, on the Alibi's stationery. On July 9, 1980, Mrs. Genova signed a power of attorney prepared by an attorney introduced to her by Mark Genova, directing the transfer of the trust assets to the account of Ann Cleary Genova in the Pan American Bank of Palm Beach County, Florida. The next day, Mrs. Genova's attorney presented the power of attorney to a second trust officer at Florida National, who, her testimony shows, refused to accept it because she had reservations about it based on her knowledge of the finding of undue influence in the dissolution proceeding and of the Genovas' remarriage.
Because of its doubts about the validity of the revocation attempts, Florida National petitioned the probate court for instructions as to how to proceed regarding the trust revocations. On the same day, Mrs. Genova filed in the circuit court a petition for writ of mandamus ordering Florida National to transfer the trust assets to the Pan American Bank and requesting damages.
The two cases were consolidated for trial in the probate court. At the conclusion of the trial, the trial judge entered his final judgment granting Florida National's petition for instructions and dismissing Mrs. Genova's petition for writ of mandamus. The trial court found that Mrs. Genova's attempts to revoke the trust were effected through the use of undue influence, practiced intentionally by Mark T. Genova upon Mrs. Genova and were therefore invalid and of no legal significance.
The Fourth District Court of Appeal reversed, finding that whether Mrs. Genova was unduly influenced to revoke the trust by her husband was not the "determinative question." Instead, the district court considered the issue to be "whether the settlor, who is the sole beneficiary of the trust during her lifetime (subject to her right to direct otherwise) could be deprived, prior to her death, of her right to revoke the trust in the absence of judicial determination or medical certification of her physical or mental incapacity." 433 So.2d at 1213. We agree with the district court that the principle of undue influence has no place in determining whether a competent settlor can revoke a revocable trust;[1] therefore, we approve its decision.
Mrs. Genova has the power to revoke this trust at any time she wishes to do so. The Restatement of Trusts (Second) § 330(1) provides:
§ 330 Revocation of Trust by Settlor
(1) The settlor has power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power.
Paragraph three of the instrument creating the trust expressly manifests her intention that the trust be revocable. It provides, inter alia, under the section dealing with management of the trust, "... unless this Trust Agreement shall have been otherwise revoked or amended... ."
It is likewise clear here that Mrs. Genova validly exercised her power to revoke. She initially sought to revoke the trust on July 10, 1980, by means of a letter which was signed by herself and her attorney and which was delivered to the co-trustee bank. Comment (i) of the Restatement of Trusts (Second) § 330 further states:
i. Where no method of revocation specified If the settlor reserves the power to revoke the trust but does not specify any mode of revocation, the power can be exercised in any manner which sufficiently *897 manifests the intention of the settlor to revoke the trust.
Any definitive manifestation by the settlor of his intention that the trust should be forthwith revoked is sufficient.
Mrs. Genova's letter clearly manifests her intent to revoke. Hence, once the trustee determines that (1) the settlor has reserved the power to revoke[2] and (2) the power to revoke has been validly exercised, that ends the inquiry. The trustee's only duty at that point is to return the trust assets to the settlor. In other words, the trustee's duties to conserve the trust property and manage it wisely for the benefit of the benficiaries who will receive the trust property at the settlor's death, ends when the settlor exercises his or her right to revoke.
A revocable trust is a unique type of transfer. According to E. Carr, Revocable Trusts, 5-6 (1980), "[i]t is created when a person, called the settlor, subjects property owned by him to a trust for the benefit of at least one other person, reserving to himself as settlor-beneficiary the income from the trust property for life and the power to revoke the trust in whole or in part at any time. The other person or persons' enjoyment of the trust is postponed until the settlor's death." By definition, then, when a settlor sets up a revocable trust, he or she has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property. This retention of control over property distinguishes a revocable trust from the other types of conveyances in which the principle of undue influence is applied, i.e., gifts, deeds, wills, contracts, etc.
Petitioners rely on Rich v. Hallman, 106 Fla. 348, 143 So. 292 (1932), and Hoffman v. Kohns, 385 So.2d 1064 (Fla. 2d DCA 1980), to support their argument that the principle of undue influence should be applied to revocable trusts. The facts in Rich v. Hallman did not involve a revocable trust, however. In Rich, the donor of an inter vivos gift was seeking to have the transaction rescinded, alleging that it was procured through undue influence. Thus, as we said above, the transaction was completed at the time the gift was made, and the donor no longer retained any control over the ownership of her property. Once the gift is made, the only way that the donor can regain outright ownership of her interest in the property, is to allege undue influence. On the other hand, the beneficiaries of Mrs. Genova's trust other than herself, who are not parties to this particular proceeding,[3] do not come into possession of any of the trust property until the event of Mrs. Genova's death, and even this interest is contingent upon her not exercising her power to revoke. Since she is the sole beneficiary of the trust during her lifetime, she has the absolute right to call the trust to an end and distribute the trust property in any way she wishes.
We disagree with the result reached in Hoffman v. Kohns. The Second District Court of Appeal in that case acknowledged that no Florida case had applied the principle of undue influence to the revocation of *898 a living trust. Nevertheless, relying on Rich v. Hallman, it upheld a finding by the trial judge that the particular revocable trust could not be revoked because of the undue influence of the settlor's wife. Reliance on Rich v. Hallman was misplaced for the reasons which we expressed above. Therefore, we disapprove the holding in Hoffman v. Kohns.
The courts have no place in trying to save persons such as Mrs. Genova, the otherwise competent settlor of a revocable trust, from what may or may not be her own imprudence with her own assets. When she created this trust, she provided a means to save herself from her own incompetence, and the courts can and should zealously protect her from her own mental incapacity. However, when she created this trust, she also reserved the absolute right to revoke if she were not incompetent. In order for this to remain a desirable feature of a trust instrument, the right to revoke should also be absolute.
Accordingly, we approve the decision of the Fourth District Court of Appeal.
It is so ordered.
BOYD, C.J., and ALDERMAN and SHAW, JJ., concur.
OVERTON and McDONALD, JJ., dissent with an opinion.
OVERTON and McDONALD, Judges, dissenting.
The dissent of Judge Hersey in the decision under review should be approved as the decision of this Court. The trial judge found that the settlor had been unduly influenced causing her to revoke her trust. Her act, therefore, was not the exercise of her right to revoke, but rather was the will of another foisted on her. Under these circumstances the revocation should be voided.
NOTES
[1] There is no question of competency for purposes of this appeal. A separate appeal was filed in the district court which involves the question of the mental capacity of Mrs. Genova. That appeal has been stayed pending the outcome of the decision of this Court in this case. In re: The Trust of Ann Cleary Genova, No. 82-1538.
[2] Respondent argues in her brief to this Court and the district court cites in its opinion Restatement (Second) of Trusts § 339, comment a (1957) and Waldron v. Commerce Union Bank, 577 S.W.2d 669, 674 (Tenn. App. 1978) as authority for her position that undue influence has no place in the revocation of this trust. While we agree with the propositions quoted from those authorities, they do not resolve the problem in the instant case. Restatement of Trusts (Second) § 339 stands for the proposition that a settlor, who is the sole beneficiary of a trust, may revoke the trust even if he reserved no right to revoke. This section is inapplicable to the instant case for two reasons  first, Mrs. Genova is not the sole beneficiary of this trust, see Restatement (Second) of Trusts, § 127 (1957), and second, she has expressly reserved the right to revoke this trust by the terms of the instrument.
[3] The Semanskees, residuary beneficiaries of Mrs. Genova's revocable trust, were initially parties to this proceeding in the trial court. They were not parties to the original appeal in the Fourth District Court of Appeal, but sought to intervene on rehearing. Their motion to intervene on rehearing was denied by the Fourth District Court of Appeal.