GLICKSTEIN, Judge.
This is the second separate appeal from the second, separate. trial involving Ann Cleary Genova. We affirm, subject to our conclusions hereinbelow.
The first appeal came to this court without disclosure therein by the lawyers of the existence of the present appeal until after *479 the opinion of the court had been issued. See the opinion of this court on motions for rehearing and to intervene, Genova v. Florida National Bank of Palm Beach County, 433 So.2d 1211 (Fla. 4th DCA 1983). At no time in the first appeal was this court asked to consolidate it with the present appeal.
We mention all of the foregoing because the “piecemeal justice” which has resulted from non-disclosure may be, in fact, the absence of justice. We say “may be” as the continued non-disclosure to this court and the trial court has resulted in this present appeal perhaps becoming a study in moot futility.
As we pointed out in our earlier opinion, at which point only two of the present panel were concerned with the first appeal, the parties concerned themselves with the issue of undue influence. They did not focus here upon mental capacity nor seek remand for the trial court to render a decision on the issue of mental capacity of Mrs. Genova as of July, 1980. As a result, it was this court that put the spotlight upon the issue of mental capacity and concluded reversal was in order because a lack of same had not been shown. The Supreme Court agreed in Florida National Bank of Palm Beach County v. Genova, 460 So.2d 895 (Fla.1984). That court, prior to appellant’s motion for rehearing, was apparently never presented with the suggestion of remand for a determination of mental capacity. Nevertheless, the court said, in the last substantive paragraph of its opinion that “the courts should zealously protect her from her own mental incapacity.”
All of which brings us to the present appeal, which was stayed by a split decision of the motion panel of this court in September 1983, without knowledge of or participation by the present merits panel. While this appeal was stayed, the supreme court approved our decision in the first appeal. Only then was the stay on this appeal released for consideration by the merits panel.
Unknown to the merits panel, before sixty days had run on the issuance of this court’s mandate in the first appeal, the parties appeared before the trial court on a petition for mandamus filed by Mrs. Geno-va’s attorneys. The petition told the trial court nothing of this pending appeal and prayed for immediate release of all of Mrs. Genova’s property, free of the trust. The petition was served on the banks involved less than one day prior to the hearing on the petition. The guardian ad litem of the residual beneficiaries, out-of-state infants, was not served with either the petition or the subsequent order from the trial court nor did he learn of the order until after the time for appeal of the order, entered on February 27, 1985, had passed. Neither bank protested in writing the shortness of notice to them nor did either appeal the order of the trial court, directing the release of the property — all prior to the expiration of sixty days after our mandate.
Prior to oral argument, none of the lawyers for the parties, including the guardian ad litem, filed anything to inform the merits panel in the present appeal of what had occurred in the trial court on February 26 and 27,1985. It was not until the guardian ad litem filed an emergency motion, after oral argument, and the parties sought to supplement the record, that we had any knowledge the property which was the subject matter of the present appeal was back in Mrs. Genova’s control, free of all trusts.
Where does all of that leave us? First, the foregoing leaves us powerless to make any meaningful decision in this case. No one filed a statutory petition to have Mrs. Genova declared incompetent in 1983, 1984 or 1985 but the record in the appeal is replete with evidence that she was senile in 1980 and 1981. No trial judge, however, has ever ruled that she lacked mental capacity in July 1980, although the trial court was asked by the parties to make that determination in the trial of the case which led to the first appeal. It was this court, as we have said, not the parties, which vigorously raised the significance of mental capacity to prominence in the appeal of the-first case.
*480 The horse is out of the barn. We have no idea of Mrs. Genova’s present mental capacity nor whether 1985 will see or has already seen a repetition of the ongoing Christmases for her much younger husband with Mrs. Genova’s assets. We do know that there is ample competent evidence in the present record for the trial court to have concluded that she lacked mental capacity on those occasions when, in 1981, she signed and sent instruments to the Bank in an effort to revoke or amend her trust. Accordingly, we affirm that conclusion of the trial court, as well as its voiding of the subject instruments described in paragraph two. It was error for the trial court, however, to consider the area of undue influence and we strike its findings and conclusions with respect to same. We do not take this latter act haughtily as our decision, as well as that of the supreme court on this point in the first appeal, was not unanimous. As in other value judgments, its becoming law was solely dependent upon the number of judges who ascribed to it. Here it was 2-1. There it was 4-2. At least the ratios were consistent.
We are not troubled by the fact that in our first appeal we expressly provided for a statutory petition to determine competency as the means of preventing revocation of the trust whereas in this second appeal, the trial court was acting in the framework of mental capacity. These were two separate cases, which is the basis for our present dilemma. What we said in the first appeal could hardly control the second case, which had already been decided at the trial court level but not briefed here. In fact, appellee’s answer brief in this case was filed on July 28, 1983, one day after our opinion on rehearing was issued.
Hindsight is a wonderful thing, they say. If a Monday morning quarterback is smart, then one who calls the plays on Wednesday must be brilliant. Had we sua sponte done the lawyering as well as the judging for the parties in 1983, we could have remanded the first appeal to the trial court for a determination of the issue of mental capacity in 1980. Similarly, the trial court in this second case could have done the lawyering as well as the judging and could have suggested consideration of Mrs. Genova’s mental capacity in 1980 as well as 1981. Much of the evidence came from 1980. But we judges are paid to judge and lawyers are paid to lawyer.
In short, we did the best with what we had. But what we had was clearly not enough. We protected Mrs. Genova’s dignity as an individual; but to what end if she truly was not only mentally incapacitated in 1980 but now as well?
ANSTEAD, C.J., and WALDEN, J., concur.