581 So.2d 186 (1991)
Muriel PAANANEN, Appellant,
v.
Marcia KRUSE and Mary Lisa Johnson, Appellees.
No. 90-01769.
District Court of Appeal of Florida, Second District.
May 24, 1991.
Rehearing Denied June 26, 1991.
William T. Witt of Mouser & Wells, P.A., St. Petersburg, for appellant.
*187 Phillip A. Baumann of Lyle & Skipper, P.A., Tampa, for appellees.
CAMPBELL, Acting Chief Judge.
Appellant, Muriel Paananen, seeks reversal of the final judgment that revoked probate of Erma Jean Carson's 1987 will and invalidated her 1987 revocable trust on the basis of a finding that appellant used undue influence to procure the execution of the will and trust. We affirm.
Erma Jean Carson died on November 20, 1988. She was survived by her two great nieces, appellees Marcia Kruse and Mary Lisa Johnson. They were the residual beneficiaries under Mrs. Carson's 1985 will which was admitted to probate after revocation of the 1987 will. Mrs. Carson and her husband, Harry, had moved to a retirement center in Pinellas County in 1985. Karl Amschler, Harry's nephew and appellees' father, assisted the Carsons with their business affairs. Because of failing health, Harry Carson was moved into the extended health care facility that was part of their retirement center and Erma followed him there shortly. Because Karl Amschler and appellees were not residents of Florida, in June 1985, Mr. Amschler began looking for someone to help him with the Carsons' affairs. The director emeritus of the retirement center who had known appellant for twenty-five to thirty years suggested that Mr. Amschler contact appellant, a minister's widow who did volunteer work at the retirement center on a fairly regular basis. As a result, appellant began to assist Erma and look after her business affairs. She drove Erma to her appointments, accompanied her on shopping trips, wrote and kept track of her checks and generally became a friend and a companion.
In October 1985, Erma executed a last will and testament that left her entire estate to Karl, to his wife if he predeceased Erma, and to appellees if Karl and his wife had both predeceased her. The will did not mention Harry because he was not expected to live much longer. Erma's relationship with appellant continued to grow and strengthen through 1986, and into 1987, with appellant consulting Karl from time to time. As Harry's condition deteriorated, Erma told appellant she wanted to ensure that she and Harry would be taken care of in the event they were unable to care for themselves or each other. The same law firm that drafted Erma's 1985 will also represented appellant. Appellant told Erma to see an attorney about her affairs and, on Erma's behalf, appellant called her own attorney in the law firm rather than the attorney who had drafted Erma's 1985 will and was familiar with Erma. That lawyer knew before meeting Erma that he was being hired to draft a trust. As a result, he did ultimately draft a will and revocable trust for Erma in 1987. During the initial conference, appellant accompanied Erma into the private offices of the attorney where the proposed trust and will were discussed. All of the subsequent written and telephone communications were between the attorney and appellant. Appellant was present at both office conferences, one to give the initial instructions and the other to sign the documents. After the documents were signed, they were given to appellant for safekeeping. Erma's only opportunity to read the will and trust was when she signed them. She asked no questions of the lawyer. Both Karl and Harry were extremely ill when the documents were signed. Karl died four days later.
Under the terms of that 1987 trust and will, the assets of the trust were to be used by appellant as trustee for the benefit of Erma for her life, then for the benefit of Harry for his life, then to Karl for his life and the rest and residue upon the death of the last of these three to appellant. Harry died within a short time, leaving appellant as the sole beneficiary upon the death of Erma. There was testimony that Erma suffered from Alzheimer's Disease and severe depression and was referred by her physician to a psychiatrist. The psychiatrist testified that, while competent, Erma was, because of her severely weakened mental state, particularly susceptible to the undue influence of appellant and was, in fact, controlled by that undue influence to such a great extent that the will and trust *188 reflected the will and desires of appellant rather than those of Erma. There was evidence that upon becoming trustee of Erma's property, appellant attempted to prohibit communication between Erma and appellees. There was testimony that appellant left instructions with the retirement and extended care facility that if Erma's family came to visit, they should be evicted. When they did come, they were forced to leave. Appellant instructed the lawyers involved with the trust and will not to disclose their contents to appellees. There was other evidence in the record which, if relied upon by the trial judge, amply supports his finding of undue influence sufficient to sustain his revocation of the 1987 trust and will.
We write in this case to distinguish the case of Florida National Bank of Palm Beach County v. Genova, 460 So.2d 895 (Fla. 1984). Appellant relies upon Genova to argue that the trial judge erred in revoking Erma's revocable trust upon the basis of appellant's undue influence. Genova does stand for the authority that undue influence is not an available remedy to revoke a settlor's revocable inter vivos trust where the settlor is still alive at the time the action for revocation based upon undue influence is initiated. We do not construe Genova to be authority for the position argued by appellant.
Appellant argues that Genova also stands for the rule that undue influence is not an available remedy to revoke an inter vivos revocable trust where at the time of the action for revocation the settlor is deceased and the trust has ripened into a testamentary disposition. Such is not the law in this state any more than it is the law that a will, which is by its nature revocable by the testator up until his or her death, is not revocable on the basis of undue influence after the death of the testator. To the contrary, wills are specifically revocable on this basis. Genova. Once a gift is completed as here, by death, and the grantor's capacity is established, the only way the estate may regain control is to allege undue influence. Genova.
Finding Genova not applicable to the circumstances of this case and finding sufficient evidence to support the trial judge's finding of undue influence, we affirm.
FRANK and ALTENBERND, JJ., concur.