STEVENSON, J.
 

 The issue in this appeal is whether a trustee may challenge the settlor’s revocation of an inter vivos revocable trust, on undue influence grounds, after the settlor’s death. We answer this question in the negative and affirm the trial court’s order dismissing the instant claim brought by appellant, Liz MacIntyre as Trustee of the Helen M. Wedrall Trust.
 

 Many years prior to this litigation, Helen M. Wedrall executed a revocable trust agreement transferring her assets to a revocable trust. Under the terms of Wed-rall’s will, the residue of her estate would pour over into the trust. At the time of Wedrall’s death, the residue of Wedrall’s trust was to be equally divided among three of her sisters, Agnes Wedell, Dorothy Ziegler, and Liz MacIntyre. Following Wedrall’s death, MacIntyre, as Trustee of the Helen M. Wedrall Trust, filed suit against Wedell, alleging that, just weeks prior to her death, Wedrall had placed her money into an account that was jointly titled in Wedrall’s and Wedell’s names and that Wedrall had transferred cash and securities to Wedell. According to the allegations of the complaint, these transfers by Wedrall were made at a time when Wedrall was suffering from physical and mental ailments and were the product of Wedell’s undue influence over Wedrall. Upon defendant Wedell’s motion, the trial court dismissed the suit with prejudice, finding our supreme court’s decision in
 
 Florida National Bank of Palm Beach County v. Genova,
 
 460 So.2d 895 (Fla. 1984), bars an undue influence challenge to a settlor’s removal of funds from her revocable trust. We agree and affirm the dismissal.
 

 In
 
 Genova v. Florida National Bank of Palm Beach County,
 
 433 So.2d 1211 (Fla. 4th DCA 1983), seventy-six-year-old Ann
 
 *274
 
 Cleary married Mark Genova, who was thirty-two. During the marriage, Cleary created a revocable trust, naming herself and Florida National Bank of Palm Beach County as co-trustees. About two years later, Cleary and Genova divorced. During the dissolution proceedings, the trial court set aside Cleary’s transfer of certain of her assets to Genova, finding the transfer was the result of undue influence.
 
 See id
 
 at 1213. Several months after the divorce, Cleary and Genova remarried. Five days after the remarriage, Cleary wrote to the bank, indicating she wished to revoke her trust. Aware of the prior finding of undue influence, the bank refused to transfer the funds and, instead, filed a petition in the probate court, seeking instruction on how to proceed. Cleary filed a petition for writ of mandamus. The trial court found Cleary’s attempts to revoke the trust were the product of her husband’s undue influence and were, thus, invalid. Cleary appealed. This court reversed, finding that concepts of undue influence could not be resorted to in order to deprive a “settlor, who is the sole beneficiary of the trust during her lifetime ..., prior to her death, of her right to revoke the trust in the absence of a judicial determination or medical certification of her physical or mental incapacity.”
 
 Id
 

 The supreme court affirmed our decision in
 
 Genova.
 
 In so doing, the court explained that a revocable trust is “a unique type of transfer” and “[b]y definition, ..., when a settlor sets up a revocable trust, he or she has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property.” 460 So.2d at 897. The settlor’s retention of control “distinguishes a revocable trust from the other types of conveyances in which the principle of undue influence is applied, i.e., gifts, deeds, wills, contracts, etc.”
 
 Id
 
 The court further wrote:
 

 The courts have no place in trying to save persons such as Mrs. Genova, the otherwise competent settlor of a revocable trust, from what may or may not be her own imprudence with her own assets. When she created this trust, she provided a means to save herself from her own incompetence, and the courts can and should zealously protect her from her own mental incapacity. However, when she created this trust, she also reserved the absolute right to revoke if she were not incompetent. In order for this to remain a desirable feature of a trust instrument, the right to revoke should also be absolute.
 

 Id.
 
 at 898.
 
 Genova
 
 thus held that a co-trustee could not seek to preclude the settlor from revoking her trust on the grounds of undue influence, but suggested that the settlor could be precluded from revoking the trust if she were incompetent.
 

 Appellant MacIntyre insists
 
 Genova
 
 does not control here because, in
 
 Genova,
 
 the settlor was alive at the time of the challenge to the revocation and, here, the settlor is deceased. MacIntyre points to the decision in
 
 Paananen v. Kruse,
 
 581 So.2d 186 (Fla. 2d DCA 1991). There, at the time Emma and Henry Carson moved into a retirement center, Emma Carson’s will left her estate to her husband’s nephew and, should the nephew and his wife predecease Carson, then to her great nieces. The nephew lived out-of-state and sought someone to help manage the Car-sons’ affairs. The director of the retirement center recommended Muriel Paananen, who did volunteer work at the center. Paananen helped Emma Carson -with her business affairs and the two became friends. Emma Carson then executed a new will and revocable trust, the terms of which provided that the assets of the trust were to be used for the benefit of the Carsons during their lifetime and then for the benefit of the nephew during his life
 
 *275
 
 time, with the residue going to Paananen. Emma Carson’s husband and the nephew died a short time later. After Emma Carson died, her great nieces, the beneficiaries under the 1985 will, filed suit, challenging the 1987 will and revocable trust on the ground that they were the product of Paananen’s undue influence over Emma Carson. The trial court revoked probation of the 1987 will and invalidated the trust, finding both were the product of undue influence.
 

 The Second District affirmed in
 
 Pa em-anen
 
 and rejected the argument that
 
 Ge-nova
 
 precluded an undue influence challenge to the validity of the trust.
 

 Appellant argues that
 
 Genova
 
 also stands for the rule that undue influence is not an available remedy to revoke an inter vivos revocable trust where at the time of the action for revocation the settlor is deceased and the trust has ripened into a testamentary disposition. Such is not the law in this state any more than it is the law that a will, which is by its nature revocable by the testator up until his or her death, is not revocable on the basis of undue influence
 
 after
 
 the death of the testator.
 

 581 So.2d at 188.
 
 [1]
 

 Paananen
 
 is plainly distinguishable from the instant case. Despite the opinion’s quoted language above speaking in terms of the
 
 revocation
 
 of an inter vivos revocable trust, the actual claim there was that the
 
 creation
 
 of the trust was the product of undue influence. The decision in
 
 Paananen
 
 noted that, at the time of the action there, the inter vivos trust had ripened into a testamentary disposition,
 
 ie.,
 
 the trust assets had poured-over into the 1987 will.
 
 Id.
 
 at 188. Here, the inter vivos trust was revoked during the set-tlor’s lifetime and never ripened into a testamentary disposition. Further, the
 
 Genova
 
 decision itself plainly suggests the availability of an undue influence challenge to the settlor’s revocation of his or her revocable trust should not turn upon whether the action is brought when the settlor is alive or deceased.
 
 Genova
 
 reached the supreme court as a consequence of the conflict between this court’s decision in
 
 Genova
 
 and the Second District’s decision in
 
 Hoffman v. Kohns,
 
 385 So.2d 1064 (Fla. 2d DCA 1980). In
 
 Geno-va,
 
 the settlor of the trust was alive, the settlor herself was attempting to revoke the trust, and the co-trustee bank refused to act on her attempted revocation. In
 
 Hoffman,
 
 the action challenging the decedent’s revocation of the trust was brought by a would-have-been beneficiary of the trust
 
 after the settlor died.
 
 The Second District relied upon “undue influence” to disaffirm the decedent’s revocation of the trust. The supreme court expressly disapproved this result in
 
 Hoffman
 
 after writing that “the principle of undue influence has no place in determining whether a competent settlor can revoke a revocable trust.” 460 So.2d at 896.
 

 In sum, we hold that, as a consequence of
 
 Genova,
 
 even after the settlor’s death, the settlor’s revocation of her revocable trust during her lifetime is not subject to challenge on the ground that the revocation was the product of undue influence. Thus, having considered all issues raised,
 
 *276
 
 we affirm the dismissal, with prejudice, of the “undue influence” claim.
 

 Affirmed.
 

 WARNER and DAMOORGIAN, JJ., concur.
 

 [1]
 

 .
 
 Paananen
 
 was decided in 1991. In 1992, the legislature enacted a statute providing that “[a] trust is void if the execution is procured by fraud, duress, mistake, or undue influence,"
 
 see
 
 section 737.206, Florida Statutes (1993), and that language presently appears in section 736.0406, Florida Statutes (2008). In 2000, the legislature enacted section 737.2065, Florida Statutes (2000), which provides that "[a]n action to contest the validity of all or part of a trust may not be commenced until the trust becomes irrevocable.”